Matthew R. Follett (SBN 325481)
Email:  mfollett@foxrothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:   310.598.4150
Facsimile:    310.556.9828

Attorneys for Defendants
First-Citizens Bank and Trust Company and
First Citizens BancShares, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JARED ASHCRAFT,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FIRST-CITIZENS BANK AND TRUST COMPANY and FIRST CITIZENS BANCSHARES, INC.<br><br>                    Defendants. | Case No.: 2:26-cv-02251-JLS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br>Judge: The Honorable Josephine Staton<br>Date:  June 26, 2026<br>Time:   10:30 AM<br>Location: Courtroom 8A |

Defendants, First-Citizens Bank & Trust Company ("FCB") and First Citizens BancShares, Inc.[1] ("BancShares") (collectively referred to as "Defendants"), by and through their attorneys, hereby submit this memorandum in support of their motion to dismiss.

---

[1] BancShares is improperly named in this action and should be dismissed. *See* Section II(A). *infra.*

# TABLE OF CONTENTS

INTRODUCTION......................................................................................................1

FACTUAL BACKGROUND.......................................................................................2

LEGAL STANDARD.................................................................................................5

     I.       Rule 12(b)(2)...............................................................................5

     II.     Rule 12(b)(6)...............................................................................5

ARGUMENT............................................................................................................6

     I.       PLAINTIFF CANNOT MEET HIS BURDEN OF ESTABLISHING THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANTS. ........................................................................................................6

          A.     This Court does not have general jurisdiction over Defendants.....7

          B.     This Court does not have specific jurisdiction over Defendants because Plaintiff's claims have no connection to any contacts with California. ..................................................................................7

               1.     Defendants did not purposefully direct activities to California. ................................................................................8

               2.     Plaintiff's claims do not arise out of or relate to any contacts by Defendants with California. ..........................10

               3.     Specific jurisdiction would not be reasonable...................11

     II.     PLAINTIFF'S CLAIMS FAIL UNDER RULE 12(b)(6). ....................13

          A.     BancShares Is an Improper Party. .................................................13

          B.     Count I: SOX Retaliation................................................................13

          C.     Count II: ADA/FEHA Discrimination, Failure to Accommodate, Retaliation .....................................................................................16

          D.     Count III: FMLA Interference and Retaliation.............................18

          E.     Count IV: ERISA Interference ......................................................18

          F.     Count V: Declaratory Judgment ...................................................19

          G.     Count VII: Civil RICO ..................................................................19

          H.     Count VIII: Dodd-Frank ...............................................................20

          I.     The Amended Complaint fails to State a Claim for Any Alleged California Causes of Action.........................................................21

ii

           1.     California Statutory Claims (FEHA, Invasion of Privacy, Labor Code).........................................................................21

           2.     California Common Law Claims .......................................22

CONCLUSION.................................................................................................23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE CASE NO. 2:26-CV-02251-JLS-JDE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal, Solano Cnty.*,
   480 U.S. 102 (1987) ............................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 5-6, 14

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ........................................................................ 8-9

*Baron v. Galactic Enters., LLC*,
   2025 WL 2432513 (E.D. Cal. Aug. 22, 2025) ..................................................16

*Bell v. Univ. of California Davis Med. Ctr.*,
   2013 WL 1896318 (E.D. Cal. May 6, 2013), *R&R adopted*, 2013 WL
   2664552 (E.D. Cal. June 11, 2013) ..................................................................16

*Bhotiwihok v. Fairlife, LLC*,
   2026 WL 237295 (C.D. Cal. Jan. 26, 2026) .......................................................5

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ...............................................................................6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
   582 U.S. 255 (2017) ............................................................................ 7-8, 11, 13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................9

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................................ 7-9

*California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*,
   2023 WL 1869010 (E.D. Cal. Feb. 9, 2023) ......................................................6

*Connor v. Quest Diagnostics, Inc.*,
   298 F. App'x 564 (9th Cir. 2008) .....................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE
CASE NO. 2:26-CV-02251-JLS-JDE

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ................................................................................13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................5, 7

*Daria v. Hurly*,
   2015 WL 5736667 (N.D. Cal. Oct. 1, 2015) ................................................ 19-20

*Davis v. Cranfield Aerospace Sols., Ltd.*,
   71 F.4th 1154 (9th Cir. 2023) .................................................................................9

*Digital Realty Tr., Inc. v. Somers*,
   583 U.S. 149 (2018)...............................................................................................20

*Dornell v. City of San Mateo*,
   19 F. Supp. 3d 900 (N.D. Cal. 2013)....................................................................16

*Dytrt v. Mountain States Tel. & Tel. Co.*,
   921 F.2d 889 (9th Cir.1990) ................................................................................18

*Erhart v. BofI Holding, Inc.*,
   612 F. Supp. 3d 1062 (S.D. Cal. 2020) ................................................................13

*Ewing v. Flora*,
   2015 WL 12564225 (S.D. Cal. Mar. 25, 2015)............................................. 19-20

*Ferris v. Amazon.com Services, LLC*,
   778 F. Supp. 3d 879 (N.D. Miss. 2025) .................................................................1

*Fonseca v. City of Chico*,
   2014 WL 2574610 (E.D. Cal. June 9, 2014)........................................................16

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
   592 U.S. 351 (2021).............................................................................. 7-8, 10

*Godelman v. Pennymac Fin. Servs., Inc.*,
   2026 WL 928087 (C.D. Cal. Mar. 31, 2026) ......................................................15

*Halaco Eng'g Co. v. Costle*,
   843 F.2d 376 (9th Cir. 1988)..................................................................................2

v

*Hansen v. Musk*,
    653 F. Supp. 3d 832 (D. Nev. 2023), *aff'd*, 122 F.4th 1162 (9th Cir. 2024) ..................................................................................................................15

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) ..............................................................................9

*Hill v. Workday, Inc.*,
    773 F. Supp. 3d 779 (N.D. Cal. 2025)......................................................... 21-22

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...............................................................................................6

*Lake v. MTC Fin., Inc.*,
    2017 WL 3129624 (W.D. Wash. July 24, 2017)...................................................6

*Lebow v. Huston Buick GMC Cadillac, Inc.*,
    2022 WL 2189475 (C.D. Cal. Apr. 22, 2022)....................................................13

*Lee v. Comprehensive Health Mgmt.*,
    2020 WL 4810108 (D. Haw. Aug. 18, 2020)......................................................19

*Limbu v. UST Glob., Inc.*,
    2017 WL 8186674 (C.D. Cal. Apr. 20, 2017)....................................................15

*Lindora, LLC v. Isagenix Int'l, LLC*,
    198 F. Supp. 3d 1127 (C.D. Cal. 2016)................................................................5

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014)..............................................................................7

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)..............................................................................5

*Novitzky v. Transunion LLC*,
    2024 WL 5424114 (C.D. Cal. Apr. 11, 2024)......................................................5

*Panavision International, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)............................................................................11

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)..............................................................................5

vi

*Petersen v. Cnty. of Stanislaus*,
   2012 WL 4863800 (E.D. Cal. Oct. 12, 2012)......................................................16

*Picot v. Weston*,
   780 F.3d 1206 (2015) ...........................................................................................10

*Powell v. DeJoy*,
   2024 WL 649237 (C.D. Cal. Jan. 4, 2024)...........................................................17

*Prencipe v. Pishevar*,
   2023 WL 12195965 (C.D. Cal. Aug. 9, 2023) ......................................................22

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................................................7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ..................................................................................6

*Ricotta v. State of Cal.*,
   4 F. Supp. 2d 961 (S.D. Cal. 1998), *aff'd sub nom. Ricotta v. State of Calif.*, 173 F.3d 861 (9th Cir. 1999) .....................................................................20

*Rocheleau v. Microsemi Corp., Inc.*,
   680 Fed. App'x 533 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 166
   (2017)....................................................................................................................14

*Rocke v. Canadian Auto. Sports Club*,
   660 F.2d 395 (9th Cir. 1981) ......................................................................... 11-12

*Samper v. Providence St. Vincent Med. Ctr.*,
   675 F.3d 1233 (9th Cir. 2012) ..............................................................................16

*Sanders v. City of Newport*,
   657 F.3d 772 (9th Cir. 2011) ................................................................................18

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................... 5-7

*Shah v. Cap. One Fin. Corp.*,
   768 F. Supp. 3d 1033 (N.D. Cal. 2025)........................................................ 21-22

*Snead v. Metro. Prop. & Cas. Ins. Co.*,
   237 F.3d 1080 (9th Cir. 2001)..............................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE
CASE NO. 2:26-CV-02251-JLS-JDE

*Sustrick v. CI Cap. Partners LLC*,
    2025 WL 1626175 (N.D. Cal. May 5, 2025)........................................................14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................................................5

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ..............................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................... 8-9

*Ward v. United Airlines, Inc.*,
    986 F.3d 1234 (9th Cir. 2021) ............................................................................21

*Weinberg v. Valeant Pharms. Int'l*,
    2017 WL 6543822 (C.D. Cal. Aug. 10, 2017) *aff'd sub nom.*
    *Weinberg v. Valeant Pharms, N. Am., LLC*, 76 F. App'x 328 (9th Cir.
    2019) ...................................................................................................................21

*Yamashita v. LG Chem., Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ...............................................................................10

*Ziegler v. Indian River Cnty.*,
    64 F.3d 470 (9th Cir. 1995) .......................................................................... 11-12

**Statutes**

15 U.S.C. § 78u-6 ......................................................................................................20

15 U.S.C. § 78u-6(h)(1)(A)(i)....................................................................................20

18 U.S.C. § 1341........................................................................................................22

18 U.S.C. § 1343........................................................................................................22

18 U.S.C. § 1344........................................................................................................22

18 U.S.C. § 1348........................................................................................................22

18 U.S.C. § 1514A(a)(1)............................................................................................14

18 U.S.C. § 1961(1) ...................................................................................................20

18 U.S.C. § 1962(c) ...............................................................................................19

18 U.S.C. § 1962(d) ...............................................................................................20

18 U.S.C. § 2510(15) ..............................................................................................21

18 U.S.C. § 2701 .....................................................................................................21

29 U.S.C. § 1140 .....................................................................................................18

42 U.S.C. § 12102(1) ..............................................................................................17

42 U.S.C. § 12102(2) ..............................................................................................17

42 U.S.C. § 12111(8) ..............................................................................................17

Americans with Disabilities Act, 42 U.S.C. § 12101 ........................................*passim*

Cal. Code Civ. Proc. § 410.10 ..................................................................................6

Cal. Gov't Code §12926(j) .....................................................................................17

Cal. Gov't Code §12926(m) ...................................................................................17

Cal. Penal Code § 631 ....................................................................................... 21-22

California Invasion of Privacy Act, Cal. Penal Code §§ 630–638.90 .....................21

Dodd Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ..............................20

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ..................................................................................................................18

Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ...............................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ................................................................................... 13, 19-20

Sarbanes-Oxley Act, Pub. L. 107–204, 116 Stat. 745 (2002) .........................*passim*

SOX § 404 .................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................20

ix

Fed. R. Civ. P. 12(b)(2) ...............................................................................................5

Fed. R. Civ. P. 12(b)(6) ...................................................................................5, 15, 22

Fed. R. Civ. P. 26(f)....................................................................................................2

Fed. R. Civ. P. 37........................................................................................................2

Fed. R. Civ. P. 56......................................................................................................15

SEC R. 13a-15 .............................................................................................................4

x

## INTRODUCTION

This case is about an employment dispute between Plaintiff, Nevada resident, and FCB, a North Carolina corporation. After Plaintiff received a written warning, he flooded FCB with emails—most or all generated via artificial intelligence ("AI")—accusing FCB of violating numerous federal and state laws, including the Sarbanes-Oxley Act ("SOX"), Securities and Exchange Commission ("SEC") rules, the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"). What has unfolded since has been nothing short of obfuscation and abusive litigation tactics.

This case is a cautionary tale about the dangers posed by the misuse of AI in legal proceedings. As articulated by one federal judge, AI creates a "creation-response imbalance" where the AI-user can create reams of legally unsupported communications and filings at the click of the button and force the other party to spend significant time and resources in responding. *Ferris v. Amazon.com Services, LLC*, 778 F. Supp. 3d 879, 880-81 (N.D. Miss. 2025). This imbalance detracts from meaningful litigation activity.

Plaintiff previously deployed his abusive AI tactics in the Office of Administrative Law Judges (OALJ), where he first brought his SOX whistleblower claim. There, the OALJ judge addressed Plaintiff's AI abuse, noting his practice of inundating the court with endless motions which were "near impossible" to comprehend and treating the docket as his "personal work journal[.]" (Doc. 1-3 at 41-43 (characterizing Plaintiff's submissions as "borderline unintelligible").) Plaintiff made multiple improper filings (Doc. 1-3 at 42), sent emails directly to FCB directors and leadership despite its representation by counsel (Doc. 1-3 at 25), repeatedly accused counsel of making misrepresentations to the Court (Doc. 1-1 at 57-69), and refused to confer with counsel (Doc. 1-1 at 40-44).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE CASE NO. 2:26-CV-02251-JLS-JDE

Now, Plaintiff has brought the same abusive AI practices to this Court. He has already made several procedurally improper filings before Defendants have even filed a responsive pleading. (*See, e.g.*, Docs. 12-14 (filing proofs of service of unissued summonses); Doc. 16 (requesting Court intervention because the undersigned counsel had not yet filed a notice of appearance following improper service attempts, and requesting a Rule 26(f) report before discovery had begun); 19 (moving for Rule 37 sanctions without following the local rules); 33 (notice that Plaintiff was moving residences); 35 (notice of supplemental facts)). Some of these filings contained erroneous citations.  (*See* Doc. 30 at 5-6).  Plaintiff even filed a motion for *ex parte* relief because Fox Rothschild has not filed a notice of appearance in this action. (Doc. 37.) These abusive litigation practices alone warrant dismissal. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (as amended) (internal citations omitted).

## FACTUAL BACKGROUND

On August 23, 2021, FCB—a bank incorporated and headquartered in North Carolina—hired Plaintiff as a Senior Merchant Sales Specialist at its location in Greenville, North Carolina. (Decl. L. Hodge ¶ 4; Decl. L. Quinto ¶ 5.)  As a condition of his employment, Plaintiff signed an Employment Agreement that provided for certain disputes to be resolved in North Carolina under North Carolina law. (Decl. L. Quinto ¶ 6.)  Plaintiff worked at the Greenville, North Carolina location until he relocated to Las Vegas, Nevada on October 18, 2024, where he worked remotely. (*Id.* at ¶ 8.)

As a Senior Merchant Services Specialist, Plaintiff's principal job duties consisted of selling payment-processing services to new and existing clients of FCB. (Decl. J. Miller ¶ 3.)  Plaintiff worked with a number of vendors in his role, including one that was based in California, and alleges that he had a "California-based pipeline."  (Doc. 29 ("Am Compl.") ¶¶ 28, 67.)  As part of his compensation, Plaintiff

qualified for incentive payments based on the amount of revenue he generated by selling these services. (Decl. J. Miller ¶ 5.)

Plaintiff broadly alleges that, beginning in March 2024, he disclosed to "FCB management" suspicions that certain vendor accounts, including the "Jackson Hewitt accounts," had been "diverted" from FCB. (Am. Compl. ¶ 63.) Plaintiff alleges the following two reports that were sent via text message:

- On September 14, 2024, a supervisor in FCB's Merchant Services division asked Plaintiff about the Jackson Hewitt accounts which had allegedly been "stole[n]" by a competitor and subsequently re-signed in with FCB. (Am. Compl. ¶ 64; Doc. 1-3 at 34.)

- On March 24, 2025, Plaintiff messaged his manager, Carlos Gonzalez, that "Worldpay"—another seller of payment-processing services—"just stole another MASSIVE account from us." (Am. Compl. ¶¶ 5, 69-70; Doc. 1-3 at 33 (emphasis in original).)

While Plaintiff alleges in conclusory fashion that these two text messages evidenced whistleblower disclosures related to "internal-control and revenue-attribution issues[,]" (Am. Compl. ¶¶ 63, 66), none of these words appear in them. Rather, Plaintiff alleges they reflect "an attempt to undermine Plaintiff's credit" for incentives relating to the accounts. (Am. Compl. ¶ 65.)

On April 23, 2025, Plaintiff received a written warning for overall performance and attendance concerns. (Am. Compl. ¶ 83; Doc. 1-3 at 2-3.) The next day, Plaintiff requested accommodations and leave under the ADA and FMLA. (Am. Compl. ¶ 89; Doc. 1-2 at 61-62.) He alleges that, on May 20, 2025, he emailed the FCB Board and Audit Committee claiming to supplement his "vendor fraud disclosure" (apparently the March 24, 2025 message to Carlos Gonzales, *see* Doc. 1-3 at 33) and accusing FCB—for the first time and without specific explanation—of violating "internal

3

control obligations under SOX § 404/SEC Rule 13a-15." (Am. Compl. ¶¶ 104; Doc. 1-3 at 30-32.)

The next day, FCB issued a letter responding that it had duly begun an internal investigation into Plaintiff's concerns regarding the ADA and FMLA. (Am. Compl. ¶ 106; Doc. 1-2 at 56-58.) FCB informed Plaintiff that it lacked sufficient information to understand the nature of his vague references to SOX and SEC violations and asked him to provide details about his concerns so that it might investigate them too. (Am. Compl. ¶ 107; Doc. 1-2 at 56-57.) Finally, FCB informed Plaintiff that due to the volume of emails he was sending, his email communications were being rerouted to a centralized location. (Am. Compl. ¶ 97; Doc. 1-1 at 10.)

On May 22, 2025, Plaintiff informed FCB that he was unable to continue performing his job duties given his various internal complaints, and he was placed on administrative leave per his request. (Am. Compl. ¶ 111; Doc. 1-1 at 12 (referencing his "Protected Workload Suspension Declaration").) Pursuant to FCB's administrative leave policy, Plaintiff's access to FCB's systems was revoked during the leave period, with the associated data preserved. (Am. Compl. ¶¶ 113, 122; Doc. 1-3 at 8.)

On June 17 and 18, 2025, Plaintiff repeatedly notified FCB that he was blocked from accessing funds in his 401(k) account because FCB had not reported his "separation status" to Fidelity. (Am. Compl. ¶ 128.) FCB responded that it had not done so because Plaintiff's "employment with First Citizens Bank ha[d] not been terminated." (Doc. 1-1 at 12.) Plaintiff insisted that he had been constructively discharged and accused FCB of blocking his access to his retirement funds as a "transparently coercive and bad-faith tactic." (*Id.*) In response, FCB agreed to change Plaintiff's employment status to terminated and to inform Fidelity of the same. (*Id.* at 11.)

## LEGAL STANDARD

### I.    Rule 12(b)(2)

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff cannot carry this burden simply by "rest[ing] on the bare allegations of its complaint." *Bhotiwihok v. Fairlife, LLC*, 2026 WL 237295, at *2 (C.D. Cal. Jan. 26, 2026) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Nor will "[m]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations" suffice. *Id.* (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)).

A court may consider extrinsic materials in deciding a motion under Rule 12(b)(2). *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (C.D. Cal. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014)). While reasonable inferences are drawn in favor of the plaintiff, a court "may not assume the truth of allegations that are contradicted by affidavit[.]" *Id.* at 1136 (citing *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)).

### II.    Rule 12(b)(6)

While a *pro se* litigant is generally "held to less stringent standards" than a represented party, his pleading cannot satisfy Rule 12(b)(6) with "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Novitzky v. Transunion LLC*, 2024 WL 5424114, at *2 (C.D. Cal. Apr. 11, 2024) (citations omitted). Under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible only when the plaintiff pleads facts allowing "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But a "formulaic recitation of

the elements" of a claim do not suffice, nor do "naked assertions devoid of further factual enhancement." *Id.* (citation omitted). A court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

A court may properly consider exhibits filed with Plaintiff's initial complaint without converting a Rule 12(b)(6) motion into a Rule 56 motion where the documents are incorporated by reference in the Amended Complaint or the court takes judicial notice of the documents. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, 2023 WL 1869010 at *5 n.3 (E.D. Cal. Feb. 9, 2023) ("Although an amended complaint supersedes the previous, the Court finds it may properly take judicial notice of the exhibits attached to the initially filed complaint..."); *Lake v. MTC Fin., Inc.,* 2017 WL 3129624 at *3 (W.D. Wash. July 24, 2017). A court may also take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).[2]

## **ARGUMENT**

### **I.    PLAINTIFF CANNOT MEET HIS BURDEN OF ESTABLISHING THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANTS.**

California's long-arm statute authorizes the exercise of personal jurisdiction "coextensive with federal due process requirements." *Schwarzeneggar*, 374 F.3d at 800-01; Cal. Code Civ. Proc. § 410.10. Federal due process requirements allow a court to exercise personal jurisdiction only where a defendant has "certain minimum contacts" with the forum state so that the exercise "does not offend 'traditional notions of fair play and substantial justice.'" *Schwarzeneggar*, 374 F.3d at 800-01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "In judging minimum contacts, a court properly focuses on the relationship among the defendant,

---

[2] Most of the exhibits to the original complaint were also filed on the OALJ docket.

6

the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citation omitted).

A court may exercise two types of personal jurisdiction over a defendant: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). Neither are appropriate here.

**A.    This Court does not have general jurisdiction over Defendants.**

General jurisdiction is appropriate in a forum in which the defendant is "essentially at home[,]" which, when the defendant is a corporation, is its "place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014)). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id.* (citing *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014)).

This is not an exceptional case. Defendants' business activities in California, which amount to a small proportion of their activities nationwide (L. Hodge Decl. ¶¶ 4-8), do not come close to "approximat[ing] physical presence" in California and do not meet the "exacting standard" necessary for this Court to exercise general jurisdiction over Defendants. *Schwarzeneggar*, 374 F.3d at 801 (citation omitted).

**B.    This Court does not have specific jurisdiction over Defendants because Plaintiff's claims have no connection to any contacts with California.**

Where general jurisdiction does not exist, a court may exercise specific jurisdiction, or "case-linked' jurisdiction, only over a "narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021). The "primary concern" of the specific jurisdiction analysis is the "burden on the defendant." *Bristol-Myers Squibb*, 582 U.S. at 263.

To be subject to specific jurisdiction, a defendant must have "reached out beyond its home" and "purposefully availed itself of conducting activities within the

forum state." *Id.* at 359 (cleaned up). These contacts must have been "the defendant's own choice and not random, isolated, or fortuitous." *Id.* (citation omitted).

But purposeful availment on its own is not enough—there must also be a "substantial connection" between the "defendant's suit-related conduct" and the forum state. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Put differently, the plaintiff's claims must "arise out of or relate to" the defendant's contacts such that there is an "affiliation between the forum and the underlying controversy" in the lawsuit. *Ford Motor Co.*, 592 U.S. at 359-60 (citation omitted).

Courts in the Ninth Circuit apply a three-part test to determine whether specific jurisdiction exists over a non-resident defendant:

(1) The defendant must direct activities or purposefully avail itself of the privilege of conducting activities in the forum state.

(2) The plaintiff's claim must "arise out of or relate to" the defendant's forum-related activities.

(3) The exercise of specific jurisdiction must reasonable and "comport with fair play and substantial justice."

*Axiom Foods, Inc.*, 874 F.3d at 1068 (cleaned up). The plaintiff bears the burden to satisfy the first two prongs. *Id.* at 1069. If it does, the defendant bears the burden to prove the third. *Id.*

Here, Plaintiff cannot carry his burden as to either of the first two prongs. And even if he could, this Court's exercise of specific jurisdiction in this case would not be reasonable.

        1.     *Defendants did not purposefully direct activities to California.*

Plaintiff cannot satisfy the first prong of the specific jurisdiction analysis. Courts in the Ninth Circuit examine purposeful direction through the "effects" test articulated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783

(1984). *Axiom Foods, Inc.*, 874 F.3d at 1069.[3] Under that test, a defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted). Plaintiff fails to carry his burden as to the second and third elements.

FCB did not take action aimed at California in the context of Plaintiff's employment. At most, Plaintiff alleges that his performance of his job duties (which are irrelevant to the claims he asserts) generated his own contacts with California as he marketed FCB's services to FCB customers in California. (*See* Am. Compl. ¶¶ 28, 30 ("At all relevant times, Plaintiff worked remotely but serviced an assigned California market . . . ."), 60.) But to carry his burden to show purposeful direction, Plaintiff must demonstrate that his claims arise out of the *Defendants'* contacts, not his own. *Walden*, 571 U.S. at 284 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). He cannot "rely on the strength of his own forum connections, coupled with" Defendants' knowledge of those connections, to establish that Defendants purposefully directed activities at California. *Axiom Foods, Inc.*, 874 F.3d at 1069.

The Amended Complaint additionally fails to allege FCB caused any harm that it knew would be suffered in California. Rather, Plaintiff has claimed harms—lost compensation under his employment agreement with FCB and emotional harm— were localized to him personally and felt only where he lived. This does not satisfy *Calder*, which requires a demonstration of "harm suffered in the forum state" to find purposeful direction. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023) (citation omitted). Nor were his alleged injuries "tethered to" California in any meaningful way. *Walden*, 571 U.S. at 290. Instead, they were "entirely personal to him and would follow him wherever he might choose to live or

---

[3] Plaintiff's thirteen claims sound in tort, so the purposeful direction test applies. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023).

9

travel"—be that in Nevada or North Carolina had he continued to reside there, or any other state. *Picot v. Weston*, 780 F.3d 1206, 1215 (2015). As such, the "effects of Defendants' actions are not connected to California in a way that makes those effects a proper basis for jurisdiction." *Id.* (cleaned up).

        2.    *Plaintiff's claims do not arise out of or relate to any contacts by Defendants with California.*

Even if Plaintiff did succeed in showing purposeful direction, his claims should still be dismissed because he cannot carry his burden as to the second prong. To do so, he must show his claims were either caused by Defendants' California contacts or relate to those contacts in a way sufficient to support jurisdiction. *Ford*, 592 U.S. at 362. While notionally a claim may "relate to" contacts even when not directly caused by them, that "does not mean anything goes"—"the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* As the Ninth Circuit has noted, this limitation practically means that "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove." *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023). Put differently, a defendant must have "foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 506.

For reasons discussed above, Plaintiff cannot show that his claims relate to Defendants' contacts with California. While Defendants employed Plaintiff to direct remote sales activities to multiple states, including California, his *claims* are not based on his performance of his own duties but on allegations that Defendants acted wrongfully with respect to *their* obligations to *him* flowing from their employment relationship. Those allegedly wrongful acts were necessarily directed at Plaintiff personally. That means Plaintiff's claims relate only to contacts with North Carolina and Nevada—where Plaintiff resided during his employment with FCB—and not California, where he did not. *See Bristol-Myers Squibb*, 582 U.S. at 264-65.

3.    *Specific jurisdiction would not be reasonable.*

To assess whether it would be reasonable to subject an out-of-state defendant to its specific jurisdiction, a court considers seven factors. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). These factors support that exercising specific jurisdiction over Defendants would be unreasonable:

(1)    **The extent of the defendant's purposeful interjection into the forum state.** Defendants have not purposefully interjected themselves into California at all as relevant to Plaintiff's claims. Plaintiff never worked for FCB in California and was not employed to do so. (L. Quinto Decl. ¶¶ 4-8; J. Miller Decl. ¶ 7.) California is the focus of only a small proportion of FCB's business activities, which mostly take place in North Carolina (where Plaintiff was originally hired by FCB to work) and South Carolina. (L. Hodge Decl. ¶¶ 4-6; L. Quinto Decl. ¶ 8.) BancShares does not have any physical presence in California. (L. Hodge Decl. ¶¶ 7, 9.)

(2)    **The burden on the defendant in litigating in California.** The burden on Defendants is high. Defendants are headquartered on the opposite coast. (L. Hodge Decl. ¶¶ 4, 7.) None of the material evidence or witnesses with relevant personal knowledge are located there. *See Rocke v. Canadian Auto. Sports Club*, 660 F.2d 395, 399 (9th Cir. 1981) (finding high burden to defendant where the evidence, witnesses, and "most of the discovery" were concentrated in Quebec). And, since Plaintiff himself is not a California resident (*see* Am. Compl. ¶ 30), he would not be burdened by litigating elsewhere. *Cf. Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) (noting this factor favors a defendant where its burden of litigating in California is equal to the plaintiff's burden of litigating in another forum).

11

(3)    **The extent of conflict with the sovereignty of the defendant's state.** California's exercise of jurisdiction would interfere with North Carolina's sovereignty because Plaintiff asserts numerous claims under California statutory and common law, even though he agreed in his Employment Agreement with FCB that North Carolina law would govern any dispute between the two. (L. Quinto Decl. ¶ 6); *see Ziegler*, 64 F.3d at 475.

(4)    **The forum state's interest in adjudicating the dispute.** California has no interest in the outcome of a dispute between North Carolina (FCB) and Delaware (BancShares) entities and a Nevada resident based on allegations of conduct taking place outside its borders. (L. Hodge Decl. ¶¶ 4, 7; L. Quinto Decl. ¶ 8; J. Miller Decl. ¶¶ 6-7.) The welfare of California's citizens is not at stake here. *Ziegler*, 64 F.3d at 475.

(5)    **The most efficient judicial resolution of the dispute.** None of the evidence or witnesses are located in California, and litigating there would involve significant travel for all parties. *Rocke*, 660 F.2d at 399-400.

(6)    **The importance of the forum to the plaintiff's interest in convenient and effective relief.** Litigating in California would not serve Plaintiff's interest in convenient and effective relief as he lives in Nevada. (Am. Compl. ¶ 30.)

(7)    **The existence of an alternative forum.** There are multiple alternative fora more suitable to resolving this lawsuit—namely Nevada or North Carolina.

Although a defendant bears the burden of establishing unreasonableness, that burden is lighter where the plaintiff shows only marginal or attenuated contacts. *Lebow v. Huston Buick GMC Cadillac, Inc.*, 2022 WL 2189475, at *6 (C.D. Cal. Apr.

12

22, 2022) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)). And since the "primary concern" of personal jurisdiction is the "burden on the defendant[,]" *Bristol-Myers Squibb*, 582 U.S. at 263, that burden is given "significant weight" in assessing reasonableness, *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal, Solano Cnty.*, 480 U.S. 102, 114 (1987). Each individual factor shows that this Court's exercise of personal jurisdiction here would be unreasonable.

## II.   PLAINTIFF'S CLAIMS FAIL UNDER RULE 12(b)(6).

Even if this Court concludes that it has jurisdiction over these claims, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### A.   BancShares Is an Improper Party.

BancShares is a parent company of FCB with no alleged employment relationship to Plaintiff.  (Am. Compl. ¶¶ 31-32.) The Amended Complaint claims that BancShares is liable under SOX, RICO and Dodd-Frank, (Am. Compl. at 21, 29-30) but fails to plead any conduct by BancShares other than filing legally required financial statements, (*id.* at ¶¶ 22, 155-56). There is no allegation that BancShares was required to disclose any of the events or conduct described in the Amended Complaint in its financial disclosures, or that it failed to do so. As such, any claim against BancShares should be dismissed.

### B.   Count I: SOX Retaliation

SOX is not "a general compliance statute." *Erhart v. BofI Holding, Inc.,* 612 F. Supp. 3d 1062, 1099 (S.D. Cal. 2020). Since it "does not police all employee grievances and suspicions of wrongdoing," *id.*, it applies only where an employee engages in protected activity—that is, when he "provides information regarding any conduct which he reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal

law relating to fraud against shareholders." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (citing 18 U.S.C. § 1514A(a)(1)) (cleaned up). A plaintiff's "reasonable belief" contains both subjective and objective components. *Id.* at 1000-1001. To satisfy the objective component, the plaintiff's report must "at least approximate the basic elements" of fraud. *Rocheleau v. Microsemi Corp., Inc.*, 680 Fed. App'x 533, 535 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 166 (2017).

The Amended Complaint alleges that Plaintiff engaged in protected activity by reporting:

(1)    The loss of the Jackson Hewitt accounts to a competitor, as reflected in two text messages with his managers, suggesting that this created internal control and revenue attribution failures (Am. Compl. ¶ 165; Doc. 1-3 at 33-34); and

(2)    The alleged suppression of his ability to pursue a "Neutraderm/DRMTLGY" sales opportunity (Am. Compl. ¶ 165).

*Twombly* and *Iqbal* require Plaintiff to provide more than conclusory allegations to support the notion that he reasonably believed the reported conduct concerned violations of one of the six enumerated categories in section 1514A(a)(1). *See Sustrick v. CI Cap. Partners LLC*, 2025 WL 1626175, at *1, 4-5 (N.D. Cal. May 5, 2025). But conclusions are all Plaintiff offers. (*See* Am. Compl. ¶¶ 63 (stating, without explanation, that Plaintiff's reports "rais[ed] internal-control and revenue-attribution issues"), 66 (same), 70 (stating, without explanation, that a competitor's conduct was "improper and harmful to FCB's internal controls"); 165 (alleging in conclusory fashion that Plaintiff "reasonably believed" the reported conduct constituted various types of fraud)). Nor does he allege any basis suggesting that any such belief was reasonable.  His job duties had no relation in theory or practice to FCB's internal controls or federal financial filings. He does not allege that he ever had any personal knowledge of what information was incorporated in those filings or

reported to shareholders.  Rather than explain *how* he believed the reported conduct violated relevant law, Plaintiff simply "hands [this Court] a fact pattern and asks it to specify what conduct could be believed" a violation. *Godelman v. Pennymac Fin. Servs., Inc.*, 2026 WL 928087, at *4 (C.D. Cal. Mar. 31, 2026).

Further, even if Plaintiff's alleged reports were true, the reported conduct would not have impacted FCB's financial statements. *See Hansen v. Musk*, 653 F. Supp. 3d 832, 838 (D. Nev. 2023), *aff'd*, 122 F.4th 1162 (9th Cir. 2024). Indeed, Plaintiff's alleged reports concern revenue that was either properly received by FCB (Am. Compl. ¶ 65 (admitting Plaintiff "had recovered" the Jackson Hewitt accounts allegedly lost)), or to which FCB was never entitled in the first place (Am. Compl. ¶¶ 87, 97 (describing the "Neutraderm/DRMTLGY" opportunity as a prospective deal never realized)).  Even were that not the case, SOX is not "intended to encompass every situation in which any party takes an action that has some attenuated, negative effect on the revenue of a publicly-traded company[.]" *Limbu v. UST Glob., Inc.*, 2017 WL 8186674, at *6 (C.D. Cal. Apr. 20, 2017) (citation omitted).

The true nature of Plaintiff's grievances was simply a compensation dispute. (Am. Compl. ¶¶ 65 (describing the Jackson Hewitt issue as "an attempt to undermine Plaintiff's credit" for landing the accounts); 66 (describing the "Jackson Hewitt facts" as, among other things, "sales-credit disputes"); 232 (complaining the reported conduct interfered with the "benefits of the employment and compensation arrangement" and his "ability to close or receive credit for deals [he] developed"); 236-39 (claiming the lost "account credits" reduced his compensation).  But routine compensation disputes do not implicate federal securities law, and complaining of them does not make an employee a whistleblower under SOX.

**C.    Count II: ADA/FEHA[4] Discrimination, Failure to Accommodate, Retaliation**

To bring claims for disability discrimination under either a disparate treatment or failure to accommodate claim, Plaintiff must sufficiently allege that he suffered from a disability and was subjected to an adverse employment action because of the disability. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (elements of a disparate treatment claim); *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (elements of a failure to accommodate claim). In addition, to bring a retaliation claim, Plaintiff would have to allege facts to support a causal connection between his protected activity and the adverse action. *Petersen v. Cnty. of Stanislaus*, 2012 WL 4863800, at *3 (E.D. Cal. Oct. 12, 2012).

The Amended Complaint lacks sufficient specificity as to the nature of Plaintiff's disability or how it limits a major life activity. *Bell v. Univ. of California Davis Med. Ctr.*, 2013 WL 1896318, at *4 (E.D. Cal. May 6, 2013), *R&R adopted*, 2013 WL 2664552 (E.D. Cal. June 11, 2013) (noting that it is the plaintiff's "responsibility to allege his disability with specificity"); *Fonseca v. City of Chico*, 2014 WL 2574610, at *3 (E.D. Cal. June 9, 2014). He merely alleges that he disclosed his "protected medical information," but provides no facts about the nature of the disability or its impact on major life activities. (Am. Compl. ¶¶ 176-77.) Plaintiff further claims that his son's medical condition caused him to miss work for a

---

[4] Plaintiff's FEHA claims have not been administratively exhausted as the Amended Complaint does not allege that he received a notice of right to sue letter from the California Civil Rights Department ("CRD"), only from the EEOC. *Baron v. Galactic Enters., LLC*, 2025 WL 2432513, at *9 (E.D. Cal. Aug. 22, 2025) ("In short, Plaintiffs have failed to obtain a right-to-sue letter from DFEH/CRD such that each Plaintiff has failed to exhaust administrative remedies under FEHA."); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013) ("A claimant cannot file a lawsuit until receiving a right-to-sue notice from the agency that specifically enforces those laws."). Indeed, Plaintiff admits that the CRD did not issue that letter because it lacked jurisdiction over his claims. (Am. Compl. ¶ 43.)

16

few days, (Am. Compl. ¶¶ 75-76) but does not allege that he disclosed his son's condition to FCB or that FCB otherwise had knowledge of it. *See Powell v. DeJoy*, 2024 WL 649237, at *4 (C.D. Cal. Jan. 4, 2024) (dismissing a claim for associational disability discrimination where the plaintiff did not allege that the defendant knew of his associate's disability). As such, Plaintiff fails to adequately plead that he is disabled. 42 U.S.C. §12102(1)-(2); Cal. Gov't Code §12926(j), (m).

Furthermore, to the extent the Amended Complaint can be read to allege that Plaintiff requested an accommodation (*see, e.g.,* Am. Compl. ¶ 74), the accommodation that he claims he was denied related to his participation in a Human Resources investigation—not the performance of his essential job functions. (Am. Compl. ¶¶ 98, 177-78.) His failure to accommodate claim therefore fails. *See* 42 U.S.C. § 12111(8); *Connor v. Quest Diagnostics, Inc.*, 298 F. App'x 564, 565 (9th Cir. 2008) (holding that the plaintiff's request to record a meeting and refusing to adjust supervisory methods did not relate to the plaintiff's ability to perform the essential functions of his job and therefore were not reasonable accommodations).

The Amended Complaint additionally fails to plead any facts to support that FCB took any action *because of* Plaintiff's disability, request for accommodation, or protected activity. Plaintiff first disclosed his need for an accommodation under the ADA on April 24, 2025, *after* he received a written warning. (Am. Compl. ¶ 89; Doc. 1-3 at 2-3.)  And to the extent Plaintiff's allegations regarding FCB's response to his son's hospitalization and its actions resulting in Plaintiff missing a medically necessary infusion can be understood, that conduct occurred prior to his written warning and prior to his accommodation request. (Am. Compl. ¶¶ 75-76, 78, 178-181; Doc. 1-2 at 61.) Furthermore, Plaintiff's own exhibits reveal that he was placed on unpaid leave and his employment ultimately separated because he requested to cease working during the investigation of his complaints. (Doc. 1-1 at 12.) It had

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE CASE NO. 2:26-CV-02251-JLS-JDE

nothing to do with a decision made by FCB or Plaintiff's alleged disability, accommodation request, or protected activity.

### D.    Count III: FMLA Interference and Retaliation

To state a claim for FMLA interference or retaliation, Plaintiff must sufficiently allege that he was eligible for the FMLA's protections and his employer denied him or interfered with those benefits. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). The Amended Complaint does not allege that Plaintiff was denied an FMLA benefit; rather, it merely acknowledges instances where he took FMLA leave or FCB allowed him to take leave. (Am. Compl. ¶¶ 76, 101, 112.) Plaintiff claims that he took "family-medical emergency" leave related to his son's hospitalization and that FCB "weaponized" those dates in his written warning (Am. Compl. ¶ 180.)  However, it is apparent that the written warning does not refer to those dates. (Doc. 1-3 at 2 (noting ten occurrences of unscheduled absences).) Moreover, Plaintiff's FMLA request was made on April 24, 2025, over a month after his alleged need for FMLA leave. (Am. Compl. ¶ 89; Doc. 1-2 at 61.) Accordingly, Plaintiff's FMLA interference and retaliation claims fail.

### E.    Count IV: ERISA Interference

To state a claim under Section 510, Plaintiff must allege that his employment was terminated *because of* FCB's intent to interfere with his ERISA rights. 29 U.S.C. § 1140. Plaintiff must show that (1) he was entitled to an ERISA-protected right; (2) he suffered an adverse employment action; and (3) that FCB acted with a specific intent to interfere with his right. *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990).  The Amended Complaint do does not allege that FCB interfered with Plaintiff's 401(k) rights. To the contrary, it admits that FCB complied with his request to separate his employment so that he could gain access to those funds. (Doc. 1-1 at 11-13.) Accordingly, Plaintiff's ERISA claims should be dismissed.

**F.     Count V: Declaratory Judgment**

This claim is incomprehensible and moot. FCB is not moving to compel arbitration. If any of Plaintiff's claims survive this Motion, Defendants reserve the right to compel any surviving claims to arbitration at that time.

**G.     Count VII: Civil RICO**

To state a claim for a RICO violation under Section 1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015). Plaintiff's RICO claim appears to be based on FCB's actions in (1) denying him access to its systems while he was on administrative leave (described as the "June 4 wipe and June 5 concealment sequence"), (2) trying to recover its company-owned laptop after Plaintiff's separation of employment (described as the "August 2025 SIU/local-authorities threat sequence"), (3) internally rerouting his emails to a single email address due to the enormous volume at which he sent them, (4) separating his employment per his request to access his retirement funds, and (5) somehow interfering with his former manager's availability as a witness (the "Dana Lomas February 2026 sequence"). (Am. Compl. ¶ 218.)

These allegations all relate either to Plaintiff's separation of employment or to subsequent litigation related to that employment (and his belief that FCB was impeding his litigation efforts through evidence and witness interference), not criminal activity to support a RICO claim. *Lee v. Comprehensive Health Mgmt.*, 2020 WL 4810108, at *5 (D. Haw. Aug. 18, 2020) ("Plaintiff's lawsuit…has everything to do with an employment-related injury. The remedy for Plaintiff's complaints is Title VII, and his attempt to shoehorn his discrimination…claims into a RICO claim is unavailing." (internal citations and quotations omitted)); *Daria v. Hurly*, 2015 WL 5736667, at *3 (N.D. Cal. Oct. 1, 2015) ("…RICO was intended to combat organized

crime, not to provide a federal cause of action and treble damages to every tort plaintiff.")

Even though Plaintiff uses the term "wire-fraud" (Am. Compl. ¶ 218), nothing in the Amended Complaint meets the definition of racketeering activity as defined in 18 U.S.C. § 1961(1) (including mail fraud, wire fraud, bank fraud, obstruction of justice, or other underlying criminal conduct), particularly under the heightened 9(b) pleading standard. Fed. R. Civ. P. 9(b); *Ewing,* 2015 WL 12564225, at *4. Furthermore, alleged injury to a single person does not establish a pattern of racketeering activity as required by RICO. (Am. Compl. ¶ 221); *see Ricotta v. State of Cal.*, 4 F. Supp. 2d 961, 978 (S.D. Cal. 1998), *aff'd sub nom. Ricotta v. State of Calif.*, 173 F.3d 861 (9th Cir. 1999) (collecting cases).

Plaintiff's claim for RICO conspiracy under section 1962(d) similarly fails because he fails to plead a RICO violation. *Ewing,* 2015 WL 12564225, at *4. As such, Plaintiff's RICO claims should be dismissed.

### H.    Count VIII: Dodd-Frank

As with the SOX whistleblower retaliation claim, a claim for whistleblower retaliation under the Dodd Frank Act requires a plaintiff to have reported conduct which the plaintiff reasonably believed to violate federal securities laws. 15 U.S.C. § 78u-6. This claim should be dismissed for the same reasons as Plaintiff's claim under SOX. *See* Section II.B, *supra*.

Moreover, Plaintiff must plead a causal link between his reports to SEC personnel and an adverse employment action. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155-56, 165 (2018) (Dodd-Frank prohibits adverse actions "*because of any lawful act done by the whistleblower*" (emphasis in original) (citing 15 U.S.C. § 78u-6(h)(1)(A)(i)). While Plaintiff alleges he made an SEC report on May 29, 2025, (Am. Compl. ¶ 114), he does not allege anywhere that he ever informed FCB that he

had done so. FCB could not have retaliated against Plaintiff for activity of which it was unaware.  Plaintiff's claim separately fails for this reason.

### I.  The Amended Complaint fails to State a Claim for Any Alleged California Causes of Action.

#### 1.  *California Statutory Claims (FEHA, Invasion of Privacy, Labor Code)*

Application of these California statutes to an extraterritorial worker requires an analysis of Plaintiff's citizenship, state of residence, and the amount of work in the state of California. *Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 797 (N.D. Cal. 2025) (analyzing extraterritoriality under the Labor Code and FEHA[5]). None of these elements favor extraterritorial application here.  As alleged, FCB is a North Carolina employer, Plaintiff was a Nevada resident at "all relevant times" during his employment and worked from there remotely. (Am. Compl. at 1 (caption), ¶ 30.); *see Hill*, 773 F. Supp. 3d at 797; *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1240-41 (9th Cir. 2021); *Weinberg v. Valeant Pharms. Int'l*, 2017 WL 6543822 at *6 (C.D. Cal. Aug. 10, 2017) *aff'd sub nom. Weinberg v. Valeant Pharms, N. Am., LLC*, 76 F. App'x 328 (9th Cir. 2019). Additionally, to the extent that Plaintiff's wrongful termination claim is tied to the California Labor Code, it likewise should be dismissed for inappropriate extraterritorial application.

Plaintiff's claim under California's Invasion of Privacy Act (part of California's Penal Code) ignores the express language of the statute. California's Invasion of Privacy Act is limited to communications "being sent from or received at any place within this state." Cal. Penal Code § 631.[6] Plaintiff does not allege that any

---

[5] Defendants will not separately analyze the FEHA claim as it has not been properly exhausted. *See* II(C) *supra*.

[6] Plaintiff's Stored Communications Act claim fares no better because the Amended Complaint alleges that FCB rerouted emails internally, not that it accessed a facility through which an electronic communications service is provided. (Am. Compl. ¶

of his intercepted communications were being sent from or received in California. Instead, Plaintiff alleges that emails sent from his personal email account to his FCB email account were rerouted or intercepted by FCB in North Carolina. (Am. Compl. ¶¶ 93-97.) Critically, Plaintiff alleges that his Neutraderm communications were never received by his client in California. (*Id.* at ¶ 97.) Therefore, Plaintiff does not place himself within section 631's geographic scope.

### 2. *California Common Law Claims*

Finally, Plaintiff's numerous claims under California common law fail because Plaintiff cannot demonstrate a nexus between the harm, Defendants' conduct, and California. *See Hill*, 773 F. Supp. 3d at 798 ("California courts have not expressly reduced the test for extraterritorial application of California tort law to a specified set of factors . . . [but] precedent is instructive that there must exist a recognizable nexus between the alleged harm and the State of California"); *Prencipe v. Pishevar,* 2023 WL 12195965 at *7 (C.D. Cal. Aug. 9, 2023) (finding that "it is not readily apparent how this Court could apply California law to Plaintiff's common law claims" because none of the alleged wrongful conduct occurred in California). Plaintiff alleges wrongful termination, conversion, intentional interference with economic advantage, and breach of implied covenant of good faith and fair dealing all arising under California common law. What Plaintiff does not allege, however, are any facts indicating a "recognizable nexus" between the harm and California. *Hill*, 773 F. Supp. 3d at 798. Without alleging facts demonstrating a connection between Plaintiff's harm, FCB's conduct, and California, Plaintiff cannot maintain any claims under California common law.

---

243);18 U.S.C. § 2701; 18 U.S.C. § 2510(15); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) ("An 'electronic communication service' is 'any service which provides to users thereof the ability to send and receive wire or electronic communications.' (internal citations and quotations omitted)).

## CONCLUSION

Defendants' Memorandum showcases the "creation-response imbalance" caused by abusive AI practices. Defendants were required to analyze and rebut thirteen causes of action, many of which have no legal basis or relationship to the alleged facts, in a foreign jurisdiction, all stemming from Plaintiff's separation from employment that itself was brought about by his use of AI. For these reasons, and the reasons above, Plaintiff's Amended Complaint should be dismissed.

DATED:  April 23, 2026

/s/ Matthew Follett
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:     310.598.4150
Facsimile:     310.556.9828

*Attorney for Defendants*
*First-Citizens Bank and Trust Company and*
*First Citizens BancShares, Inc.*

**CERTIFICATE OF WORD COMPLIANCE**

The undersigned counsel of record for Defendants, certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

/s/ Matthew Follett
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:     310.598.4150
Facsimile:     310.556.9828

*Attorney for Defendants*
*First-Citizens Bank and Trust Company and*
*First Citizens BancShares, Inc.*

24

# PROOF OF SERVICE

## STATE OF CALIFORNIA COUNTY OF LOS ANGELES

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 10250 Constellation Blvd., Los Angeles, California 90067.

On April 23, 2026, I served the within document as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

☒  **(By Mail)**: As Follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing to the person(s) at the address(es) set forth below. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

Jared Ashcraft

PO Box 363242

Las Vegas, NV 89036

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 23, 2026, at Los Angeles, California.

*/s/ Shamina Albano*

Shamina Albano

25