Matthew R. Follett (SBN 325481)
Email: mfollett@foxrothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*
N.C. Bar No. 44184
Email: lwilliford@foxrothschild.com
Fox Rothschild LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
*admitted pro hac vice*

Attorneys for Defendants
First-Citizens Bank and Trust Company and
First Citizens BancShares, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JARED ASHCRAFT,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST-CITIZENS BANK AND TRUST COMPANY and FIRST CITIZENS BANCSHARES, INC.<br><br>Defendants. | Case No.: 2:26-cv-02251-JLS-JDE<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Judge: The Honorable Josephine Staton<br>Date: June 26, 2026<br>Time: 10:30 AM<br>Location: Courtroom 8A |

Defendants, First-Citizens Bank & Trust Company ("FCB") and First Citizens BancShares, Inc. ("BancShares") (collectively referred to as "Defendants"), by and through their attorneys, hereby submit this reply in support of their Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA. | 3 |
| II. THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM. | 8 |
| A. BancShares should be dismissed. | 8 |
| B. Plaintiff's SOX claim should be dismissed. | 9 |
| C. Plaintiff's ADA/FEHA/FMLA claims should be dismissed. | 10 |
| D. Plaintiff does not substantively address Defendants' arguments for dismissing his ERISA, declaratory judgment, Dodd-Frank, RICO, and California state law claims. | 10 |
| E. Amendment would be futile. | 12 |
| III. PLAINTIFF'S REQUESTS REGARDING ORAL ARGUMENT. | 13 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) .......... 3

*Benko v. Quality Loan Serv. Corp.*, 789 F.3d 858 (9th Cir. 2016) .......... 12

*Bhotiwihok v. Fairlife, LLC*, 2026 WL 237295 (C.D. Cal. Jan. 26, 2026) .......... 5

*Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144 (10th Cir. 1998) .......... 9

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (2025). (Opp'n ) .......... 3, 4, 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .......... 3, 4, 5

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986) .......... 8

*Calltek Inc. v. Call Ctr. Sys., LLC*, 2018 WL 2264205 (C.D. Cal. Apr. 25, 2018) .......... 4

*Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F. 4th 943 (9th Cir. 2023) .......... 12

*Dragasits v. Yu*, 2018 WL 3063967 (S.D. Cal. June 21, 2018); *report and recommendatoin adopted*, 2018 WL 3599346 (S.D. Cal. July 27, 2018) .......... 12

*Lawrence v. Int'l Bus. Mach. Corp.*, 2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017) .......... 9

*Lindsey v. United Airlines, Inc.*, 2017 WL 2404911 (N.D. Cal. June 2, 2017) .......... 9

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998) .......... 8

*Shapiro v. AT&T Mobility, LLC*, 2023 WL 3526151 (C.D. Cal. May 2, 2023) .......... 7

*Shinde v. Nithyanada Found.*, 2014 WL 10988110 (C.D. Cal. Mar. 21, 2014) .......... 8

*Silva v. U.S. Bancorp*, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) .......... 12

*Yagman v. Kelly*,
2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) .......... 12

**Statutes**

18 U.S.C. § 1961(1) .......... 11

Cal. Lab. Code § 925 .......... 11

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 .......... 10, 11

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 .......... 9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 9(b) .......... 11

Fed. R. Civ. P. 12(b)(2) .......... i

Fed. R. Civ. P. 12(b)(6) .......... i, 8, 12

L.R. 11-6.1 .......... 15

## INTRODUCTION

As Defendants explained in their initial memorandum (Doc. 45-1), this case is an employment dispute between a Nevada employee and his North Carolina employer. That dispute has no relevant connection to California and should not be adjudicated here. Plaintiff's opposition memorandum (Doc. 61, the "Opposition" or "Opp'n") fails to grapple with this problem and does nothing to explain how *Defendants*' contacts with California *relate to his claims* in a manner sufficient to carry his jurisdictional burden. The Opposition likewise fails to explain how the Amended Complaint furnishes plausible allegations that satisfy the pleading standard as to any of his claims.

The Opposition exemplifies Plaintiff's ongoing misuse of AI that Defendants forecasted in their initial memorandum. (Doc. 45-1 at 11-12). Plaintiff submits that, unless his AI tool fabricates a fact, source document, or case from whole cloth, his use of it should be uncontroversial. (Doc. 61-8 at ¶ 2). But this misstates the problem. Instead of clearly stating his own position or responding to Defendants' arguments, Plaintiff has filled his Opposition—and the seven declarations (Docs. 61-1 through -8[1]) and hundreds of pages of exhibits (Docs. 61-9 through -14) that accompany it—with more of the same repetitive, inscrutable, and conclusory assertions that fatally infect his two pleadings (Docs. 1, 29). At every turn, Plaintiff merely restates the basic principles of governing law or the elements of a claim without further substantive argument. He only acknowledges the authority cited by Defendants to say that each is distinguishable, without describing how. And in the rare instance that he cites authority to support his own position, he does so only in the abstract, without explaining how it applies to this case. The result is an Opposition that barely

---

[1] There are a total of eight declarations on the docket, but Doc. 61-3 is a Notice of Errata relating to exhibits and does not contain any factual assertions.

advances any argument, much less succeeds in showing why this case should continue.

Of course, the harm caused by Plaintiff's AI misuse is not limited to frustrating any evaluation of the merits of his claims. Plaintiff continues to inundate this Court and the undersigned counsel with voluminous and unsupported filings and communications. Any response that disagrees with his version of the facts or law elicits conspiratorial accusations of misconduct and threats of (or further meritless motions seeking) disqualification and sanctions.[2] (*See, e.g.,* Docs. 37 (*ex parte* motion seeking to bar Fox Rothschild from appearing in the case and accusing the undersigned of "a documented pattern of tribunal-facing misrepresentations"), 52 (opposing the undersigned's *pro hac vice* motion due, in part, to "concrete risks to the ethical and orderly administration of justice"), 61-10 at 172-73 (threatening sanctions), 62 (motion for sanctions relating to two declarations relied upon by Defendants in this Motion)). Simply put, Plaintiff's vexatious misuse of AI has forced Defendants to respond constantly to nefarious theories[3] and voluminous filings[4] that detract from their ability to litigate this case.

## ARGUMENT

Plaintiff's Opposition fails to show why this Court may exercise specific personal jurisdiction over Defendants or how his Amended Complaint adequately pleaded any of its numerous claims. Accordingly, the Amended Complaint should be dismissed on either ground.

---

[2] This is not a new strategy. Plaintiff did the same thing before the Office of Administrative Law Judges (OALJ). (*See, e.g.*, Doc. 1-1 at 52-69).

[3] Plaintiff accuses Defendants via bulleted list of alleged misconduct, including "numerous false statements to the Courts," "spoliation and intent to deprive," witness tampering, and metadata manipulation. (Opp'n at 5-6).

[4] Plaintiff "acknowledges the substantial volume of this record"—almost entirely the result of his own filings—while claiming it is necessary to rebut Defendants' "imbalance of falsehoods." (Opp'n at 5).

## I. PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA.

Plaintiff's Opposition fails to identify any contacts by Defendants with California that relate to his claims in any way justifying the exercise of specific jurisdiction.[5] Instead, it offers more of the same vague and conclusory statements that riddle his Amended Complaint. That is not enough.

As explained in Defendants' initial memorandum, to establish specific jurisdiction over Defendants, Plaintiff was required to show that Defendants (1) purposely directed activity at California (2) in a way giving rise or relating to Plaintiff's claims, and that (3) subjecting Defendants to this Court's specific jurisdiction would be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017); (*see* Doc. 45-1 at 17-23). He has failed at each.

***Purposeful direction.*** Here, Plaintiff offers a muddled argument that does not address the relevant law, does not respond to Defendants' arguments, and does not explain how any specific conduct by Defendants satisfy this prong. Under the *Calder* effects test, Plaintiff was required to show Defendants (1) committed an intentional act (2) expressly aimed at California and (3) causing harm which Defendants knew was likely to be suffered in California. *Id.* at 1069; (*see also* Doc. 45-1 at 19). To the extent Plaintiff argues the law in his favor, he principally relies upon two cases: *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *Briskin v. Shopify, Inc.*, 135 F.4th 739 (2025). (Opp'n at 14-15). But neither apply to the analysis here.

*Burger King* involved claims sounding in contract. 471 U.S. at 463-64. The jurisdictional factors established in that case—prior negotiations, contemplated future consequences, contractual terms, and course of dealing—all pertain the formation and performance of the contract that is the basis for a claim. *Id.* at 478-79; *see also*

---

[5] Plaintiff concedes that general jurisdiction does not exist here. (Opp'n at 14).

*Calltek Inc. v. Call Ctr. Sys., LLC*, 2018 WL 2264205, at *5 (C.D. Cal. Apr. 25, 2018) (considering the *Burger King* factors as part of the "purposeful availment" test applied to contractual claims, rather than the "purposeful direction" test applied to tort claims). The thirteen causes of action in Plaintiff's Amended Complaint, by contrast, sound in tort, not contract. (Am. Compl., Doc. 29). Plaintiff claims in the Opposition that the "contract record"—presumably his offer letter and employment agreement—subjects Defendants to jurisdiction here because those documents were addressed to Plaintiff in California. (Opp'n at 15). Setting aside the fact that Plaintiff was expressly hired to work in North Carolina, Plaintiff's claims broadly center on alleged retaliation completely unrelated to the origin or terms of his employment agreement with FCB.[6] *Burger King* thus provides little guidance here.

*Briskin*, at the very least, does involve analogous tort claims. 135 F.4th at 751. However, the similarities end there. *Briskin* focused exclusively on the application of the second *Calder* element—"express aiming"—to a plaintiff consumer's claims based on services offered by a defendant e-commerce company on a nationwide basis. *Id.* at 755-58. It limited its holding to the narrow issue of when an "interactive platform 'expressly aims' its wrongful conduct toward a forum state[.]" *Id.* at 758. But Plaintiff's claims are not based on any alleged conduct even remotely resembling this scenario. He is not a consumer who received services through an "interactive platform" operated by Defendants nationally, nor that he was injured by any such conduct. And Defendants have not argued that *Calder*'s "express aiming" element is not satisfied here because their conduct constituted nothing more than the passive maintenance of a state-agnostic digital platform. (*See* Doc. 45-1 at 19). *Briskin*'s discussion of this element has no application here.

---

[6] Even were it relevant, the Employment Agreement provides that certain disputes arising out of the agreement must be resolved in North Carolina under North Carolina law. (Doc. 45-3 at 15).

However, *Burger King* and *Briskin* do provide a helpful contrast to this action on another point: in both cases, the plaintiffs both lived in the states where they filed suit. *Burger King*, 471 U.S. at 464; *Briskin*, 135 F.4th at 746-47. Thus, their harms were suffered in the forum states, as the defendants knew might result from their relevant conduct. *Burger King*, 471 U.S. at 480 (jurisdiction in Florida presumptively reasonable because the defendant's conduct "caused foreseeable injuries to [Burger King] in Florida"); *Briskin*, 135 F.4th at 756 (no dispute that the California plaintiff's harm was caused in California under the third *Calder* element). Not so here. Plaintiff suffered no harm in California because he lived in Nevada at the time he alleges Defendants wrongfully retaliated against him. For that reason, the third *Calder* element has not been satisfied and Plaintiff has not carried his burden to establish personal jurisdiction.

***Arise out of or relate to.*** Plaintiff's failure to carry his burden is clearest on this prong. His Opposition contains no substantive argument, instead stating in conclusory fashion that his claims "arise from and relate to" certain forms of conduct. (Opp'n at 17-18). These are nothing more than "mere bare bones assertions of minimum contacts" and "legal conclusions" which do not carry his burden. *Bhotiwihok v. Fairlife, LLC*, 2026 WL 237295, at *2 (C.D. Cal. Jan. 26, 2026) (cleaned up). And the "contacts" he references are either ambiguous buzzwords or general activities that plainly have nothing to do with his dispute with FCB.

For example, Plaintiff tersely states that his claims relate to "FCB's selected growth-market structure for expanding Merchant Services activity, referrals, customer opportunities, and revenue." (Opp'n at 17). He does not detail what discrete actions or events constitute this "activity," much less draw a link between them and the alleged retaliation on which he has based his lawsuit. Insofar as Plaintiff is simply referencing efforts to sell payment-processing services in California, those contacts

pertain to his *job duties* have no relation at all to the *retaliation* he alleges he suffered—retaliation supposedly targeting him directly where he lived in Nevada.

Elsewhere, Plaintiff states that his claims arise from the "California Market Infrastructure and retaliation tied to it." (Opp'n at 18). But as Plaintiff defines it, the "California Market Infrastructure" includes:

- Unidentified "California branches and bankers" and the undefined "Pacific/Los Angeles management structure," which have no connection to the alleged retaliation;
- "[R]eferral channels, Salesforce/CRM routing, customer opportunities, . . . Target Markets materials, and related Merchant Services systems[,]" which apparently refer to FCB's sales activities that, at most, relate to Plaintiff's job duties and have no connection to the alleged retaliation; and
- The "Pasadena business travel, corporate-card charges, [and] FI5939 / 'First Citizens Bank Pacific Ar' records," which apparently refer to one instance in February 2025 in which Plaintiff contends that he traveled to California for work purposes, although Plaintiff does not argue that travel in any way relates to the harm he claims he suffered.

(Opp'n at 8).[7]

Plaintiff's struggle to trace a sufficient connection between Defendants' contacts and his claims makes sense, because there is no connection. That is why his

---

[7] Plaintiff's 382-paragraph personal jurisdiction declaration (Doc. 61-1) and exhibit packet (Doc. 61-9) largely focus on the same irrelevant contacts. (*See* Doc. 61-1 ¶¶ 100-169). They also touch on an additional irrelevant allegation: that FCB prohibited Plaintiff from pursuing one particular sales opportunity regarding a California-based client. (Doc. 61-1 ¶¶ 173, 176, 180, 183, 187). But even if FCB's Salesforce system improperly reported or denied Plaintiff a referral to this client, (Am. Comp. at ¶¶ 85-87), none of the alleged conduct—either by Defendants in allegedly restricting Plaintiff in Nevada from pursuing the opportunity, or by Plaintiff in reporting his concerns—occurred in California or can subject Defendants to jurisdiction here.

Opposition can only repeat the bare conclusion that this prong is satisfied by vague conduct relating to his job duties rather than his claims. He has therefore failed to carry his burden to establish personal jurisdiction.

***Reasonableness.*** Plaintiff does not address any of Defendants' arguments on this prong or make any persuasive argument that subjecting eastern Defendants to the jurisdiction of a California court to adjudicate a Nevada resident's claims would be reasonable. Plaintiff argues that FCB operates 55 bank locations in California, that Defendants filed this motion through local counsel, that the "California Market Records" are "the relevant records," and that California has an interest in the "California Market Infrastructure." (Opp'n at 19). None of these arguments address the seven *Panavision* factors. (Doc. 45-1 at 21). Plaintiff even concedes that customary in-person proceedings would create a "burden" that must be ameliorated by allowing him to appear remotely to argue his own case. (Opp'n at 19). Simply put, this Court's exercise of jurisdiction over Defendants would be unreasonable, and this case should be dismissed.

***Jurisdictional discovery.*** Plaintiff alternatively seeks the opportunity to cure the fatal jurisdictional defects in his complaint with discovery. (Opp'n at 20-21). It is difficult to imagine what additional information could advance Plaintiff's arguments when the record on this Motion is already in excess of 700 pages. But jurisdictional discovery is only appropriate where a plaintiff identifies what relevant facts he expects to develop. *Shapiro v. AT&T Mobility, LLC*, 2023 WL 3526151, at *9 (C.D. Cal. May 2, 2023). While Plaintiff laundry lists several types of documents he wishes to examine, he does not identify any facts he expects those documents might reveal to support the exercise of personal jurisdiction here. Instead, he simply states without explanation that these documents are needed to "test" the declarations submitted in

support of Defendants' motion.[8] (Opp'n at 20). This amounts to nothing more than a request to conduct a fishing expedition out of a "belief" that doing so will enable him to demonstrate a jurisdictional basis, which should be denied. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

Rather than argue the sufficiency of the Amended Complaint's allegations, the Opposition largely relies on factual assertions in Plaintiff's declarations. That reliance both concedes his claims are not adequately pled and fails to cure that deficiency. "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original); *Shinde v. Nithyanada Found.*, 2014 WL 10988110, at *3 (C.D. Cal. Mar. 21, 2014) (on a Rule 12(b)(6) motion, refusing to consider extrinsic evidence a declaration containing extrinsic evidence not included in the complaint). Setting aside those extrinsic facts, Plaintiff's remaining arguments—which are summarily made and cursory at best—cannot carry his Amended Complaint through a 12(b)(6) motion, and any amendment would be futile.

### A. BancShares should be dismissed.

Plaintiff alleges that BancShares is liable because FCB's financial information was included in BancShares' financial report and that BancShares had "direct governance-channel related notice." (Opp'n at 17; 61-5). While Plaintiff's "governance channel" theory remains unclear, it seems that he is arguing that BancShares may be liable for FCB's alleged retaliation because the email addresses

---

[8] It is not clear what Plaintiff wishes to "test" or how the result would support any jurisdictional basis. Regardless, Plaintiff has failed at the outset to articulate any California contacts by Defendants that relate to his claims, irrespective of Defendants' supporting declarations.

to which he directed communications about that claimed retaliation also serve as a point of contact for BancShares. (Doc. 61-5 at 6-7). The Amended Complaint alleges none of these facts, nor that BancShares ever employed Plaintiff or itself engaged in any action that would subject it to liability under SOX, RICO, or Dodd-Frank.[9] The allegation in the Amended Complaint that BancShares "is the publicly traded parent of FCB" is insufficient to withstand a 12(b)(6) motion. (Am. Compl. ¶ 32). *Lindsey v. United Airlines, Inc.*, 2017 WL 2404911, at *5 (N.D. Cal. June 2, 2017) (dismissing a *pro se* discrimination claim against a parent corporation based on the "naked assertion" that the parent could be liable for its subsidiary's conduct); *see also Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1149 (10th Cir. 1998); *Lawrence v. Int'l Bus. Mach. Corp.*, 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1, 2017).

**B. Plaintiff's SOX claim should be dismissed.**

Plaintiff curiously relies on the OALJ's denial of a motion to dismiss Plaintiff's SOX claim. (Opp'n at 22-23). He concedes, as he must, that the OALJ's order is not binding on this Court. (*Id.*). But he fails to acknowledge another critical distinction between the OALJ proceeding and this litigation that also renders that order irrelevant. The OALJ reached its decision after considering new factual assertions in Plaintiff's opposition brief together with his pleading, perhaps because the OALJ Rules "do not address the procedure for dismissing a SOX complaint." (Doc. 1-3 at 44-45). But the Federal Rules of Civil Procedure do not permit that here. The Amended Complaint alone must supply sufficient allegations to state a plausible claim under *Twombly/Iqbal*. It does not.

---

[9] Plaintiff's cryptic statement that FCB's financial information was "included in BancShares' consolidated reporting" is irrelevant regardless of its accuracy because that conduct would not constitute retaliation or any other form of wrongful conduct with respect to Plaintiff. (Opp'n at 22).

Plaintiff's other arguments only reinforce that his SOX dispute relates to how his accounts and sales credits were "routed, tracked, and reported" in FCB's systems. (Opp'n at 23-24). Plaintiff attempts to brush off the cases relied on by Defendants as distinguishable "because they involved reports that lacked a concrete connection" to violations of securities law. (Opp'n at 25). But the reports he alleges in his own Amended Complaint are no different. (Am. Compl. at ¶¶ 104-108, 165-70 (alleging the suppression of a personal sales opportunity and the loss of accounts to a competitor)). His bald assertion that his reports related to covered conduct does not satisfy *Twombly* and *Iqbal*. (*See* 45-1 at 23-25). The SOX claim should be dismissed.

**C. Plaintiff's ADA/FEHA/FMLA claims should be dismissed.**

Plaintiff relies on a "Medical/Leave Record" through a 24-page declaration, centered around his purported medical condition, and attempts to distinguish the legal authority relied on by Defendants as "fact-specific." (Opp'n at 26; Doc. 61-4). The "Medical/Leave Record" further supports that Plaintiff did not adequately plead a disability claim. (Doc. 45-1 at 26-27). Plaintiff similarly cannot overcome the caselaw supporting that he failed to properly exhaust his FEHA claims by stating that they are "claim-specific." (Opp'n at 27). Plaintiff does not cite any legal authority to support that his ADA/FEHA/FMLA claims should not be dismissed, and he cannot overcome a motion to dismiss by relying on additional facts that are not in the Amended Complaint.

**D. Plaintiff does not substantively address Defendants' arguments for dismissing his ERISA, declaratory judgment, Dodd-Frank, RICO, and California state law claims.**

Plaintiff summarily addresses these numerous claims by citing allegations in his Amended Complaint without substantively addressing the legal authority cited by Defendants. (*See* Doc. 45-1 at 28-32). Specifically, Plaintiff makes the following unsupported arguments:

- **ERISA.** Plaintiff acknowledges that he has to plead specific intent to interfere with ERISA rights and baldly states that the "June 17-18 timing supports a plausible inference of specific intent" to deny access to his 401(k) benefits without citing any authority for that statement. (Opp'n at 28-29).
- **Declaratory Judgment.** Plaintiff claims that there is "an actual controversy concerning SOX, nonarbitrability, delegation, jury wavier, E-SIGN, California Labor Code § 925, unconscionability, and no-stay relief" without any explanation of the actual controversy in the absence of a motion to compel arbitration. (Opp'n at 29).
- **Dodd-Frank.** Plaintiff does not argue that the Amended Complaint alleges any communication to FCB about his SEC report on May 29, 2025. His position seems to be that, because he experienced alleged adverse acts after the SEC report, the Court should infer causation. He also asks to amend the Amended Complaint to add additional facts without stating what those facts are. (Opp'n at 29).
- **RICO.** Plaintiff does not even attempt to explain how the Amended Complaint meets the heightened Rule 9(b) pleading standard or how the Amended Complaint pleads a racketeering activity under 18 U.S.C. § 1961(1) or § 1962(d). (Opp'n at 30).
- **California state law claims.** Plaintiff argues that these claims should not be dismissed as a "block" without any explanation of what that term means or why it matters. He also fails to meaningfully address the respective tests for extraterritorial application of the California state law causes of action. Nor does he identify any nexus between his alleged harm and California other than to state that he worked with nonparty California clients who suffered no harm themselves. (Opp'n 30-31).

None of these arguments rebut the positions in Defendants' memorandum (Doc. 45-1). Plaintiff therefore concedes that these claims should be dismissed. *Yagman v. Kelly*, 2018 WL 2138461, at *12 (C.D. Cal. Mar. 20, 2018) (a *pro se* plaintiff who fails to substantively address a defendant's arguments in opposing a Rule 12(b)(6) motion abandons that claim); *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.").

**E. Amendment would be futile.**

"A district court has discretion to deny leave to amend where there are 'countervailing considerations' such as 'undue delay, prejudice, bad faith, or futility." *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F. 4th 943, 956 (9th Cir. 2023) (quoting *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 858, 871 (9th Cir. 2016)). "Amendment is futile when 'it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Id.* At this stage, allowing Plaintiff to amend his Complaint for a *second time* would be futile because Plaintiff has already put hundreds of pages of pleadings and exhibits before this Court and still does not manage to state a claim upon which relief may be granted. "Plaintiff's claims must be dismissed not because he fails to allege an adequate amount of facts, but because he fails to allege facts that could possibly state a claim against any of these Defendants." *Dragasits v. Yu*, 2018 WL 3063967 at *15 (S.D. Cal. June 21, 2018), *report and recommendation adopted*, 2018 WL 3599346 (S.D. Cal. July 27, 2018) (denying leave to amend after reviewing 959 pages of exhibits and determining that Plaintiff "cannot allege any set of facts that would constitute a valid and sufficient claim" against the Defendants). If Plaintiff could allege any facts that would state a claim against Defendants, it would be evident from the voluminous record before the Court. Instead, the opposite is true. Plaintiff's excessive filings

demonstrate that he cannot allege any facts that would give rise to a valid and sufficient claim against Defendants.

## III. PLAINTIFF'S REQUESTS REGARDING ORAL ARGUMENT.

Plaintiff requests that the Court decide the Motion on the briefs or, alternatively, allow for virtual hearing participation. (Opp'n at 19; Doc. 61-14). Defendants consent to Plaintiff's request that the Motion be decided on the briefs without oral argument. In the event that the Court requires oral argument, the undersigned would likewise request remote participation for North Carolina counsel.[10] Finally, Defendants object to proceeding with written questions in lieu of oral argument given that proceeding with written questions—to the extent that such procedure is even allowable—would continue to exacerbate the volume of the written record for this Motion.

## CONCLUSION

For these reasons, the Amended Complaint should be dismissed, and Plaintiff should not be allowed the opportunity to conduct additional discovery or amend the complaint for a second time.

DATED: June 12, 2026

*/s/ Lisa M. Williford*
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*

---

[10] As discussed above, the fact that Plaintiff and North Carolina counsel for Defendant would both need to undergo significant travel to appear for a hearing in this matter underscores the jurisdictional problems with this case.

N.C. Bar No. 44184
lwilliford@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
**admitted pro hac vice*

*Counsel for Defendants First-Citizens Bank and Trust Company and First Citizens BancShares, Inc.*

**CERTIFICATE OF WORD COMPLIANCE**

The undersigned counsel of record for Defendants, certifies that this brief contains 3,991 words, which complies with the word limit of L.R. 11-6.1 and the Court's Initial Standing Order dated April 27, 2026.

*/s/ Lisa M. Williford*
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*
N.C. Bar No. 44184
lwilliford@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
**admitted pro hac vice*

*Counsel for Defendants First-Citizens Bank and Trust Company and First Citizens BancShares, Inc.*