Matthew R. Follett (SBN 325481)
Email: mfollett@foxrothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*
N.C. Bar No. 44184
Email: lwilliford@foxrothschild.com
Fox Rothschild LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
*admitted pro hac vice*

Attorneys for Defendants
First-Citizens Bank and Trust Company and
First Citizens BancShares, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JARED ASHCRAFT,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST-CITIZENS BANK AND TRUST COMPANY and FIRST CITIZENS BANCSHARES, INC.<br><br>Defendants. | Case No.: 2:26-cv-02251-JLS-JDE<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**<br>Judge: The Honorable Josephine Staton<br>Date: July 10, 2026<br>Time: 10:30 AM<br>Location: Courtroom 8A |

Defendants, First-Citizens Bank & Trust Company ("FCB") and First Citizens BancShares, Inc. ("BancShares") (collectively referred to as "Defendants"), by and through their attorneys, hereby submit this response in opposition to Plaintiff's Motion for Sanctions Under Federal Rule of Civil Procedure 11 (Doc. 62, the "Motion").

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
FACTUAL BACKGROUND ........ 2
A. Mills Declaration ........ 3
B. Follett Declaration ........ 4
C. Requested Relief ........ 6
ARGUMENT ........ 6
A. The declarations and conduct at issue do not violate Rule 11(b)(3)-(4) ... 7
1. Mills Declaration ........ 7
2. Follett Declaration ........ 11
3. Other bases ........ 13
B. The sanctions sought by Plaintiff are not permitted by Rule 11 ........ 13
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Augustus v. Mercedes-Benz Fin. Servs. USA LLC*,
2025 WL 3050078 (C.D. Cal. July 28, 2025) ........ 13

*Barber v. Miller*,
146 F.3d 707 (9th Cir. 1998) ........ 10

*Bell v. Nat'l Credit Servs. Inc.*,
2020 WL 8832899 (W.D. Wash. Oct. 14, 2020), *R&R adopted*, 2021 WL 928161 (W.D. Wash. Mar. 11, 2021) ........ 9

*Bonham v. Nevada Dep't of Corr.*,
2021 WL 2346004 (D. Nev. June 8, 2021) ........ 9

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
2023 WL 9659943 (C.D. Cal. July 26, 2023) ........ 13

*Golden Eagle Distributing Corp. v. Burroughs Corp.*,
801 F.2d 1531 (9th Cir. 1986) ........ 14

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
2020 WL 816135 (C.D. Cal. Jan. 23, 2020) ........ 9

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........ 10

*Indep. Towers of Wash. v. Wash.*,
350 F.3d 925 (9th Cir. 2003) ........ 13

*Islamic Shura Council of S. Cal. v. F.B.I.*,
757 F.3d 870 (9th Cir. 2014) ........ 10

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010) ........ 9

*Mercury Serv., Inc. v. Allied Bank of Tex.*,
117 F.R.D. 147 (C.D. Cal. 1987) ........ 11

*Mercury Serv., Inc. v. Allied Bank of Tex.*,
1990 WL 90216 (9th Cir. July 2, 1990) ........ 10, 11

*Navarro-Ayala v. Hernandez-Colon*,
3 F3d 464 (1st Cir. 1993) .......... 10

*New York Times Co. v. Sullivan*,
375 U.S. 254 (1964) .......... 7

*Operating Eng'rs Pension Tr. v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) .......... 7

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
971 F.2d 244 (9th Cir. 1992) .......... 6

*Samples v. Rainsberger*,
2007 WL 3513856 (D. Ore. Nov. 8, 2007) .......... 10

*Tabi v. Stephenson*,
2023 WL 8125841 (C.D. Cal. Oct. 17, 2023) .......... 9, 11

*Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,
834 F.2d 833 (9th Cir. 1987) .......... 6

*Truesdell v. S. Cal. Permanente Med. Grp.*,
293 F.3d 1146 (9th Cir. 2002) .......... 10

*Walls v. Davidson*,
2025 WL 3552838 (C.D. Cal. Nov. 6, 2025) .......... 7

*Warren v. Guelker*,
29 F.3d 1386 (9th Cir. 1994) .......... 6

**Other Authorities**

29 C.F.R. § 18.35 .......... 2

9th Cir. R. 36-3(c)(ii) .......... 10

Fed. R. Civ. P. 11 .......... *passim*

Fed. R. Civ. P. 11(b) .......... 7, 13

Fed. R. Civ. P. 11(b)(1) .......... 7

Fed. R. Civ. P. 11(b)(2) .......... 7

Fed. R. Civ. P. 11(b)(3) .......... 7, 8, 12, 13

Fed. R. Civ. P. 11(b)(4) ........................................................ 7, 8
Fed. R. Civ. P. 11(c) ........................................................ 7, 13
Fed. R. Civ. P. 11(c)(1) ........................................................ 13
Fed. R. Civ. P. 11(c)(4) ........................................................ 13
Fed. R. Civ. P. 37(e) ........................................................ 2
L.R. 7-3 ........................................................ *passim*
L.R. 11-6.1 ........................................................ 16

## INTRODUCTION

Plaintiff's Motion is yet another installment in the ongoing history of the abusive AI litigation tactics he has been employing since he first brought this case before the Office of Administrative Law Judges (OALJ) almost one year ago. At every stage and in every forum, Plaintiff simply recycles this same tactic of accusing Defendants and the undersigned counsel of conspiracy, bad acts, and dishonesty toward the Court. These serial accusations are not only meritless, but detract from the key issues presented in this action—at this stage, whether Defendants are subject to personal jurisdiction in the state of California on Plaintiff's claims (they aren't)—and prevent Defendants from focusing on litigating their case. Before bringing his grievances to this Court's doorstep, Plaintiff filed multiple motions before the OALJ similarly accusing Defendants and the undersigned counsel of fraud, misrepresentations, and tampering with evidence. Some of those motions have been included in the record before this Court. (*See, e.g.,* Doc. 1-1 at 57-69; Doc. 1-2 at 25, 43-55; Doc. 19 at 163-165, 173-190).

At bottom, Plaintiff filed this Motion because he disagrees with factual information made in declarations filed in support of Defendants' Motion to Dismiss. That is not a proper basis for sanctions, and the Motion does nothing to advance Plaintiff's case toward a resolution on its merits. Rather, the opposite is true—Defendants are again forced to expend time and resources responding to Plaintiff's vexatious motions practice before this Court has even had the opportunity to rule on the dispositive motions before it in this matter. Plaintiff's Motion should be denied.

## FACTUAL BACKGROUND

The record before this Court includes the following examples of Plaintiff's filings in which he accuses Defendants and/or the undersigned counsel of sanctionable conduct:

Before the OALJ:

- Complainant's Consolidated Notice of Counsel's Knowing False Statement to the Tribunal on Sept. 30, 2025 and Record Clarification. (Doc. 1-1 at 57-62).
- Complainant's Supplemental Notice Regarding Counsel Misrepresentations to CALJ Henley (August 20, 2025) and Counsel Judicial Admission at the September 30, 2025 Conference. (Doc. 1-1 at 63-69).
- Complainant's Consolidated Motion for Sanctions Under 29 C.F.R. § 18.35 (Safe Harbor) and Request for Entry of Default on Liability. (Doc. 61-13 at 21).

Before this Court:

- Motion for Sanctions for Spoliation of Electronically Stored Information Under Fed. R. Civ. P. 37(e), and for Supplemental Sanctions for Non-ESI Bad Faith Conduct Under the Court's Inherent Authority. (Doc. 19).[1]
- *Ex Parte* Application for Order to Show Cause Why Fox Rothschild LLP and its Attorneys Should Not Be Barred from Appearing in This Action. (Doc. 37).[2]
- *Ex Parte* Application for Limited Scheduling Relief. (Doc. 55).[3] In this filing, Plaintiff asked the Court to consider his contemplated disqualification, *pro hac*

---

[1] This Court denied this motion and advised Plaintiff of his Rule 11 obligations. (Doc. 20). Notably, this motion was filed before counsel filed an appearance in the case or any responsive pleading.

[2] This Court denied this application. (Doc. 42).

[3] This Court denied this application. (Doc. 58).

*vice* opposition, and Rule 11 motions before ruling on Defendants' Motion to Dismiss. (*Id.* at 29).

- Plaintiff's Opposition to Defendant's Motion to Dismiss where Plaintiff makes a bulleted list of alleged misconduct. (Doc. 61 at 5-6).
- The instant Motion for Sanctions. (Doc. 62).

The above list only includes documents that have been filed before this Court and does not include other communications and filings in which Plaintiff has lobbed similar accusations of misconduct and threats of sanctions at Defendants and the undersigned counsel.

This long history of improper motions practice makes clear that Plaintiff believes Defendants simply should not be allowed to litigate their case. The Motion asks this Court to strike the declarations with which he disagrees and the enter an order "prohibiting further advocacy of the challenged California-market contentions." (Doc. 62 at 23-24). Disagreement with the opposing party's argument or position is not a basis for Rule 11 sanctions, nor should Defendants and their counsel have to litigate in an environment where Rule 11 threats and allegations of misconduct are a commonplace designed to deter meaningful litigation activities.

**A. Mills Declaration**

Defendants submitted the declaration of Jason Mills, Executive Director of Merchant Services, in support of their Motion to Dismiss. (Doc. 45-3, the "Mills Declaration"). In his declaration, Mr. Mills states: "To my knowledge, Plaintiff never attended any such meeting in California or traveled to California for business purposes on behalf of FCB during his employment." (*Id.* at 3 ¶ 7).

Plaintiff seeks sanctions against Defendants based on a Westin hotel receipt dated February 19-20, 2025, which had apparently been sent to Plaintiff's personal email address, not his FCB email address. (Doc. 61-9 at 13). Plaintiff asserts that this receipt evidences that he traveled to California one time for business purposes. He

also argues that, because Mr. Mills was copied on a March 3, 2025 email to Plaintiff from a colleague expressing that it was "a joy to see [Plaintiff's] engagement with the Pacific Market" (Doc. 61-9 at 12), Mr. Mills knew that Plaintiff had traveled to California for business purposes. (Doc. 62 at 14-15).

**B. Follett Declaration**

Plaintiff has been working with the undersigned since September 19, 2025, when she first appeared on behalf of FCB in the OALJ proceeding. (Doc. 1-1 at 40). Plaintiff was initially unwilling to recognize the undersigned as lead counsel or confer with her, taking the position that she had been "brought in to paper over the bad-faith actions of Mr. Sayre [the undersigned's partner] that are already on the record" and that both the undersigned and Mr. Sayre were fact witnesses. (*Id.* at 40-41). Unfortunately, the undersigned had to respond to the same obstructionist tactics in this matter.

By email of March 10, 2026, after Plaintiff had commenced this action in the Central District of California, the undersigned informed Plaintiff that she would also be representing Defendants in that matter and requested that Plaintiff direct related communications to her. (Doc. 62-2 at 7). In response, Plaintiff stated that he would refuse to communicate with the undersigned or her law firm until she filed a notice of appearance in this action, repeated his claim that the undersigned and Mr. Sayre were fact witnesses and thus ethically barred from representing Defendants, and promised to threaten any future local counsel with a possible Rule 11 sanctions motion. (Doc. 62-2 at 8-10).

On April 14, 2026, the undersigned requested to meet with Plaintiff by telephone to confer on Defendants' forthcoming motion to dismiss pursuant to Local Rule 7-3. (Doc. 45-2 at 6-7). Plaintiff responded by stating: "**Plaintiff cannot meet and confer with an attorney who has not been approved to act in this case in the Central District of California.**" (*Id.* at 5 (emphasis in original)). Plaintiff further

stated that he would not confer with the undersigned or Mr. Follett until they filed a notice of appearance, asserted that the undersigned had not stated with satisfactory clarity whether she represented both Defendants in this action, and claimed that he was unable to confer via telephonic format[4] due to a pending accommodation request with this Court. (*Id.*). In response, the undersigned again clarified that she and Mr. Follett represented both Defendants. (*Id.* at 10).

Between April 15 and the filing of Defendants' Motion to Dismiss on April 23, Plaintiff sent multiple emails directly to Defendants' officers, despite repeated requests that he not do so, and called certain of those officers directly on a recorded line in an attempt to meet and confer on this motion. (*Id.* at 5, 27, 52-63, 74-76). Plaintiff continued to refuse to confer with the undersigned or Mr. Follett, claiming he could not do so until they (1) clarified whether they represented both Defendants (despite multiple prior communications doing exactly that), and (2) they entered notices of appearance. (*Id.* at 14, 19-20). Plaintiff also sent Mr. Follett a "direct Rule 11 warning" threatening sanctions if Mr. Follett chose to appear in this matter. (*Id.* at 25-31). In his final emails on the topic on April 21, Plaintiff stated: "Plaintiff has not refused to confer. Plaintiff has repeatedly stated in writing that he is prepared to confer *once counsel of record appears and identifies which Defendant or Defendants counsel represents*." (*Id.* at 65 (emphasis added)).

As required by the Local Rules, Mr. Follett submitted a declaration alongside Defendants' motion to dismiss that summarized Defendants' efforts to confer with Plaintiff as set forth above, and attached all of the referenced communications as exhibits. (Doc. 45-2, the "Follett Declaration"). In that declaration, Mr. Follett stated: "Rather than schedule a time to confer with counsel by telephone, Plaintiff refused to

[4] However, in that same email, Plaintiff stated that he had called FCB's Chief Legal Officer directly in an attempt to confer, notwithstanding his unwillingness to confer (telephonically or otherwise) with counsel for Defendants as required by Local Rule 7-3. (Doc. 45-2 at 5, 27).

confer because a notice of appearance had not been filed." (Doc. 45-2 at ¶ 4). He further declared that "the parties were unable to conduct a telephonic conference prior to the filing of this motion…" (*Id.* at ¶ 5).

Plaintiff argues in this Motion that these statements were false because Plaintiff repeatedly expressed a willingness to confer if various conditions were met, and because counsel for Defendants did not spontaneously attempt to call him—despite his stated refusal to confer until his conditions were met—during a period in which they were finalizing the Motion to Dismiss for filing while responding to multiple other communications from Plaintiff. (Doc. 62-1 at ¶¶ 40-44).

**C. Requested Relief**

The Motion requests that the challenged portions of the Mills Declaration and Follett Declaration be corrected or withdrawn, that this Court issue a "corrective notice" finding that there was an "absence of a Local Rule 7-3 conference" before Defendants filed their Motion to Dismiss, and that this Court enter orders: (1) directing counsel to identify the records reviewed before filing the Mills Declaration, and (2) prohibiting the "further advocacy of the challenged California-Market contentions[.]" (Doc. 62 at 23-24). Plaintiff also requested further relief to "deter repetition." (*Id.* at 24).

## ARGUMENT

Rule 11 provides a mechanism to deter attorneys and unrepresented parties from utilizing the court process for improper purposes. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 254 (9th Cir. 1992) ("The central purpose of Rule 11 is to deter baseless filings . . . ." (internal citations and quotations omitted)); *see also Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (*pro se* plaintiffs are bound by Rule 11). As the party seeking sanctions under Rule 11, Plaintiff bears the burden of showing that sanctions are justified. *Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). Plaintiff's

Motion focuses on Rule 11(b)(3)-(4), arguing that Defendants and their counsel lacked evidentiary support for the contentions or denials in the two Declarations, all while ignoring that his use of the Rule 11 process is entirely improper. Fed. R. Civ. P. 11(b)(1)-(2). For the reasons stated below, the Motion should be denied.

**A. The declarations and conduct at issue do not violate Rule 11(b)(3)-(4).**

Rule 11 requires an attorney or party to conduct an "inquiry reasonable under the circumstances" into the nature of any assertion made in a filing with a court. Fed. R. Civ. P. 11(b). Sanctions under Rule 11(c) are an "extraordinary remedy" to be imposed only in a "rare and exceptional case" and should be exercised with "extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988). That is why such sanctions "should not be made or threatened for minor, inconsequential violations." *Walls v. Davidson*, 2025 WL 3552838, at *2 (C.D. Cal. Nov. 6, 2025) (citation omitted).

To support a sanctions award for violation of Rule 11(b)(3) or (4), statements in a declaration must be both factual in nature, incorrect, and submitted "without evidentiary support" or "with a high degree of awareness of their probable falsity." *Id.* (citing *New York Times Co. v. Sullivan*, 375 U.S. 254, 286 (1964)). But the fact that an assertion or denial is later proven to be wrong does not, by itself, establish a Rule 11 violation. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("The certification is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact.").

1. *Mills Declaration*

Plaintiff argues that the Mills Declaration is the "most serious issue" and the "clearest sanctions issue." (Mot. at 9, 19). The Motion takes issue with a single sentence in the Mills Declaration in which Mr. Mills asserts that, "[t]o [his]

knowledge," Plaintiff never traveled to California for business purposes while employed by FCB. (Mot. at 19-20; Mills Decl. ¶ 7). In Plaintiff's view, this statement warrants sanctions because materials filed by Plaintiff in opposition to Defendants' motion to dismiss "contradict[] or materially qualif[y] that statement" and therefore reveal the statement lacked the evidentiary basis required by Rule 11(b)(3)-(4). (*Id.* at 19).

Plaintiff's argument fails for the simple reason that Mr. Mills' statement is not a false statement. It plainly concerns only those facts that were within Mr. Mills' knowledge at the time he signed the declaration, which allows for the possibility that facts or information outside of his knowledge might suggest or even show otherwise. Even if it were proven that Plaintiff did travel to California for work purposes during his employment with FCB and that receipt was submitted to FCB during his employment, it would not follow that Mr. Mills knew that at the time he signed the declaration such that his statement lacked any evidentiary basis.

Plaintiff appears to recognize this fundamental flaw in the premise of his Motion. (*See* Mot. at 15 (conceding that the "issue is Mills's knowledge" of Plaintiff's purported travel)). He attempts to sidestep it by relying on a single email he received from Stephanie Daughtridge on March 3, 2025—nearly two weeks after his purported travel to California, and over one year before Mr. Mills signed his declaration—in which Ms. Daughtridge references Plaintiff's "engagement with the Pacific Market." (*Id.* at 15, 19-20; Doc. 61-9 at 12). In Plaintiff's view, the fact that Mr. Mills was copied on that email is "evidence" that Plaintiff's purported travel to California was within Mr. Mills' knowledge at the time he signed his declaration stating otherwise. (Mot. at 15).

Plaintiff does not address the obvious question of whether Mr. Mills recalled a single email from early 2025 when signing his declaration. But even setting that question aside, Ms. Daughtridge's use of the term "Pacific Market" is ambiguous and

does not obviously reference the work event Plaintiff purportedly attended in California. While Plaintiff assures this Court that Ms. Daughtridge's email "referred to the February 2025 Pasadena / Pacific Market business travel and in-person Pacific Market activity[,]" (Mot. at 15, 19-20), his declaration states only that *he* believed that to be her meaning.[5] (Doc. 62-1 at 7 ¶ 49). He provides nothing to independently evidence Ms. Daughtridge's intended meaning, or to suggest Mr. Mills himself would have understood her email to be referencing that specific work event as opposed to Plaintiff's general job duties of remotely soliciting toward California-based customers from his home in Nevada.

Nor does the existence of a Westin hotel receipt establish that Mr. Mills had knowledge of that receipt when he signed the declaration, as the receipt was sent to Plaintiff's personal email address on April 24, 2026—one day after Defendants' Motion to Dismiss was filed and three days after Mr. Mills signed the declaration. (Doc. 61-9 at 13).

And even if Mr. Mills had made an unqualified assertion rather than one limited to his then-existing knowledge, and even if it had been established beyond dispute that Plaintiff had engaged in such travel, that assertion still would not warrant sanctions merely because it was ultimately proven wrong. *See, e.g.*, *Tabi v. Stephenson*, 2023 WL 8125841, at *3 (C.D. Cal. Oct. 17, 2023); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2020 WL 816135, at *10 (C.D. Cal. Jan. 23, 2020) (sanctions not appropriate for "isolated factual errors" (citing *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010)); *Bonham v. Nevada Dep't of Corr.*, 2021 WL 2346004, at *1 (D. Nev. June 8, 2021); *Bell v. Nat'l Credit Servs. Inc.*, 2020 WL 8832899, at *5 (W.D. Wash. Oct. 14, 2020), *R&R adopted,* 2021 WL 928161 (W.D.

---

[5] Plaintiff's Motion appears to misstate the contents of his own declaration. *Compare* Mot. at 15 ("As stated in Plaintiff's declaration, Daughtridge's statement . . . referred to the [California work event.]") *with* Doc. 62-1 at 7 ¶ 49 ("I understood Ms. Daughtridge's [email] to refer to the [California work event.]").

Wash. Mar. 11, 2021) ("Disagreeing with facts and applicable law is not grounds for sanctions."); *Samples v. Rainsberger*, 2007 WL 3513856, at *2 (D. Ore. Nov. 8, 2007) ("If the court were to find that sanctions were appropriate based on this evidence, sanctions could be awarded anytime parties filed contradictory affidavits."); *see also Navarro-Ayala v. Hernandez-Colon*, 3 F3d 464, 467 (1st Cir. 1993) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.").

Nor do the cases cited by Plaintiff support an imposition of sanctions here. The bulk of these cases simply address the procedural requirements of 21-day safe harbor period—which Defendants do not contest here—and have nothing to say about the substance of the Motion. See *Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014) (reversing an order imposing sanctions because the motion was untimely); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1152 (9th Cir. 2002) (remanding to the district court to address the issue of sanctions related to factual allegations in a complaint); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (vacating the district court's award of sanctions and remanding for further consideration).

The Motion only cites two cases actually addressing the substantive basis for sanctions. One concerned a *legally* frivolous claim made in a *pleading*, not the evidentiary basis of a factual assertion in a declaration. *Holgate v. Baldwin*, 425 F.3d 671, 680 (9th Cir. 2005) (affirming sanctions for filing of meritless discrimination claim plainly barred by Supreme Court precedent). The other only further shows that Plaintiff's request for sanctions is meritless. *Mercury Serv., Inc. v. Allied Bank of Tex.*, 1990 WL 90216 (9th Cir. July 2, 1990).[6] In *Mercury Services*, the Ninth Circuit

[6] Plaintiff's citation to this unpublished disposition does not fall under the exception at Ninth Circuit Rule 36-3(c)(ii). That exception applies only where the disposition itself is a historical fact germane to an issue in the proceeding in which it is cited. *See* 9th Cir. R. 36-3(c)(ii) ("factual purposes" include "show[ing] double jeopardy,

affirmed an award of sanctions based on a declaration containing several misleading representations of the defendant's contacts with California. *Id.* at *1. The district court had imposed sanctions only after the corporate officer declaration made several admissions at his deposition that directly contradicted the assertions in his declaration and revealed them to be "seriously misleading if not outrightly false." *Mercury Serv., Inc. v. Allied Bank of Tex.*, 117 F.R.D. 147, 151 (C.D. Cal. 1987). By contrast, Plaintiff requests sanctions regarding a single statement based on significantly less evidence of its inaccuracy, let alone its lack of any reasonable evidentiary basis. Plaintiff has not met his burden to show that show that sanctions are justified. *Tabi,* 2023 WL 8125841 at *1.

2. *Follett Declaration*

The Motion seeks sanctions related to the Follett Declaration's "blanket" assertion that Plaintiff "refused to confer" regarding Defendants' motion to dismiss. (Mot. at 18-19 (taking issue with the "Follet Declaration's 'refused to confer' statement[.]"). Its basis for sanctions here is difficult to parse, and Plaintiff offers little explanation. At one point, for example, he suggests Defendants' submission of the Follett Declaration violated Rule 11 because they "knew that no completed Local Rule 7-3 conference occurred[.]" Of course, the declaration itself says as much, (Doc. 45-2 at 2 ¶ 5), as Plaintiff acknowledges, (Mot. at 19).

To the best of Defendants' understanding, Plaintiff's position is that the Follett Declaration was made without the "reasonable factual inquiry" required by Rule 11[7] because it stated that Plaintiff had "refused to confer" with Defendants on their motion to dismiss, despite the fact that he had written in several emails that he would

---

sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case").

[7] The Motion also states that Rule 11 requires a "fair presentation of the record[.]" (Mot. at 19). But it does not explain what that means, nor does it identify that requirement anywhere in the text of the Rule or in any case construing it.

not be willing to confer unless Defendants acquiesced to certain demands. (Mot. at 18-19).

It is not clear that Plaintiff believes this statement to be incorrect as a factual matter. He agrees that the parties did not confer, a failure he attributes to various unresolved issues which largely appear related to the fact that the undersigned and Mr. Follett had not yet filed notices of appearance. (*Id.* at 13-14 (noting Plaintiff's objections to "proceeding through nonappearing, entity-ambiguous, out-of-state counsel"); 19 (referencing "counsel authority, represented entity, appearance, format, recording / transcription, and access issues"). But he nevertheless seems to concede that he had refused to confer while those issues remained outstanding. (*Id.* at 14 (acknowledging Plaintiff was "refusing to confer with an attorney . . . until that attorney . . . appears as required" and had conditioned his participation in a conference on "receipt of [requested] clarification").[8] Because Plaintiff does not contend that the Follett Declaration was incorrect in any way violating Rule 11(b)(3) or (4), sanctions are unwarranted.

The Motion also states that the Follett Declaration "omitted material context" regarding the parties' meet-and-confer efforts. (*Id.* at 13). This is wrong, given that the Follett Declaration presented this Court with the full history of those efforts—including Plaintiff's responses, objections, and demands—in the email correspondence attached to it. (Doc. 45-2 at 5-76).[9] It is difficult to see how the Follett Declaration could have been "materially misleading" or "withholding [of] the factual context" by presenting these communications in full for the Court's consideration. (Mot. at 14, 19).

---

[8] Although not narrowly relevant to Plaintiff's requested sanctions, it is worth noting that none of the several conditions Plaintiff imposed on the meet-and-confer process are required by Local Rule 7-3.

[9] Plaintiff says he supplied this "omitted context" in his opposition, (Mot. at 13), but neglects to mention that all of the referenced documents were attached to the Follett Declaration. (*Compare* Doc. 61-10 at 163-180 *with* Doc. 45-2 at 5-76).

3. *Other bases*

The Motion, in cursory fashion, appears to assert that Defendants also violated Rule 11 by: (1) arguing in their Motion to Dismiss that Plaintiff's contacts with California do not subject Defendants to personal jurisdiction there; and (2) declining to withdraw or correct the Declarations in response to Plaintiff's serving them with his Rule 11 motion. (Mot. at 21-22). However, Plaintiff cites neither to any authority nor even to the text of Rule 11 to argue how this conduct could be sanctionable. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2023 WL 9659943, at *12 (C.D. Cal. July 26, 2023) ("[I]t is not the role of the Court to make parties' arguments for them.") (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)).

Regardless, neither constitutes sanctionable conduct. Defendants' argument regarding the relatedness of certain contacts to Plaintiff's claims and their sufficiency to establish personal jurisdiction is exactly that—a legal argument, not a factual assertion within the realm of Rule 11(b)(3) or (4). And Defendants' decision not to acquiesce to the demands Plaintiff made in the service copy of his motion is not a "pleading, written motion, or other paper" signed, filed, or submitted to the Court, and thus not governed by Rule 11(b). There is simply no basis for Plaintiff to seek sanctions for this conduct. *See Augustus v. Mercedes-Benz Fin. Servs. USA LLC*, 2025 WL 3050078, at *5 (C.D. Cal. July 28, 2025) (purported "unwarranted delay tactics" and "extra-pleading conduct that occurs between the parties alone" are not within the ambit of Rule 11" (cleaned up)).

**B. The sanctions sought by Plaintiff are not permitted by Rule 11.**

Rule 11(c) authorizes a court to impose monetary or nonmonetary sanctions that are "appropriate" and "limited to what suffices to deter repetition of the conduct[.]" Fed. R. Civ. P. 11(c)(1) & (4). The sanctions Plaintiff seeks—including orders striking of Defendants' supporting declarations, requiring Defendants to

divulge records likely falling under the attorney-client privilege, and forbidding Defendants from making certain arguments for the remainder of these proceedings—go well beyond these limits. (Doc. 62 at 23-24).

Rule 11 is not intended for use as a mechanism to chill a party or its counsel's ability to advocate its position on the facts or law. *See Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536-37 (9th Cir. 1986) (citing Fed. R. Civ. P. 11 advisory committee's notes to 1983 amendment). Nor should a Rule 11 motion be made "as a discovery device, . . . to intimidate an adversary into withdrawing contentions that are fairly debatable, . . . or to seek disclosure of matters otherwise protected by the attorney-client privilege[.]" Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment. But Plaintiff's Motion does exactly that. Through it, he effectively seeks to prohibit Defendants from making arguments with which he disagrees, and to punish them for having done so in their motion to dismiss. The Motion is not only an improper use of Rule 11, but an example of precisely the type of frivolous filing the Rule was designed to prevent.

## CONCLUSION

As is common in Plaintiff's filings before this Court, the positions advanced in Plaintiff's Motion are not supported by the rules or law that he cites. Defendants continue to be prejudiced by having to respond to frivolous filings and baseless accusations. For the reasons given above, Plaintiff has not shown any basis justifying an award of sanctions under Rule 11, and his Motion should be denied.

DATED: June 18, 2026

*/s/ Lisa M. Williford*
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067

Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*
N.C. Bar No. 44184
lwilliford@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
*admitted pro hac vice*

*Counsel for Defendants First-Citizens Bank and Trust Company and First Citizens BancShares, Inc.*

## CERTIFICATE OF WORD COMPLIANCE

The undersigned counsel of record for Defendants, certifies that this brief contains 4,436 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 18, 2026

*/s/ Lisa M. Williford*
FOX ROTHSCHILD LLP
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Lisa M. Williford*
N.C. Bar No. 44184
lwilliford@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400
**admitted pro hac vice*

*Counsel for Defendants First-Citizens Bank and Trust Company and First Citizens BancShares, Inc.*